## Case No. 7,441.

### JOLLY et al. v. TERRE HAUTE DRAW-BRIDGE CO.

[6 McLean, 237; [2] 3 Am. Law Reg. 29.]

Circuit Court, D. Indiana. Nov. Term, 1853.

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. John McLean, Circuit Justice.]

O. H. Smith and S. Yandis, for plaintiffs.
R. W. Thompson and J. P. Usher, for defendant.

LEAVITT, District Judge. This suit is brought by the plaintiffs, as owners of the steamer American Star, to recover damages sustained by that boat in passing through the draw of the bridge across the Wabash river, at Terre Haute. The material facts presented to the jury by the evidence are, that the Star, a stern-wheel boat, duly enrolled and licensed at the port of Cincinnati for the coasting trade, with the usual complement of officers and men, under the command of William Jolly as master, also a part owner, was engaged in the navigation of the Wabash river, making regular trips for the conveyance of passengers and freight, from Cincinnati to the highest point of navigation on said river; that in March, 1852, the water being at a high stage, as she was descending the river, in passing through the draw of the Terre Haute bridge, bow foremost, and partially laden, she struck with considerable violence against one of the piers of the bridge, her guards on one side being thereby broken, the top of the pilot-house carried away, and one of her chimneys thrown down, with some other minor injuries; that as the result of the collision, the boat was detained nearly two days at Terre Haute, in making the necessary temporary repairs, to enable her to prosecute her trip, and one week at Cincinnati, in making permanent repairs; the actual cost of which is proved to have been $371; that owing to her crippled condition after the injury, she was unable to receive freight offered below Terre Haute, to the amount of some $150 or $200; and that one entire trip was lost, the usual and estimated profit of which is stated at $1,000. The bridge was a wooden structure, with a draw having a space between the piers of about sixty feet, and at the top of the draw, when raised, of thirty or forty feet. It was erected by the defendant, under an act of incorporation granted by the legislature of the state of Indiana, containing a provision requiring the corporators to construct "a convenient draw" in the bridge. This brief outline of the case will suffice as preliminary to the consideration of the questions of law, which have been presented and argued with great ability by counsel, and upon which the instructions of the court have been requested. It is not controverted by the counsel for the bridge company, that the Wabash is a navigable stream; nor is it denied that the plaintiffs' boat, at the time the alleged injury was sustained, was employed in carrying on commerce between ports and places lying in different states. But, it is insisted, that as this bridge was erected under the authority of the state of Indiana, and in conformity with the charter granted by the state, it cannot be deemed an obstruction to navigation, in the sense of entitling the plaintiffs to compensation for the injury complained of.

The constitution of the United States contains an explicit grant of power to congress, to regulate commerce among the several states. Under this grant, there can be no question of the competency of congress to exercise jurisdiction over all the navigable streams, to the extent that may be necessary for the encouragement and protection of commerce between two or more states. This doctrine is so well settled by the uniform legislation of congress, and the frequent adjudications of the supreme court of the United States, as to render its discussion here wholly unnecessary. It is regarded as equally clear that the boat, the owners of which in this case are seeking compensation for an injury sustained, having been duly enrolled and licensed by the proper officer, in pursuance of an act of congress, was rightfully employed in the navigation of the Wabash river, and that her owners, while she was so employed, had a right to the free use of that river, and were entitled to protection against all unlawful obstructions to its navigation. It follows, that for any injury attributable to such obstructions, the law will give the needful redress. Nor is it necessary for this purpose, that there should be any express legislation of congress giving the remedy, and regulating the manner of its enforcement. The courts of the Union, if the plaintiff is a citizen of a state other than that in which he brings his suit, have jurisdiction, and are competent to administer civil remedies for such injuries, upon the principles of the common law, without any statutory enactment for that purpose. This doctrine is clearly established by the decisions of the supreme court of the United States, in the Wheeling Bridge Case, 13 How. [54 U. S.] 518.

There is another ground on which the right of every citizen of the United States to the free and unobstructed navigation of the Wabash river, may be confidently asserted. The state of Indiana is one of the states carved out of the North Western Territory, and therefore subject to the operation of that article of the compact contained in the ordinance of 1787, which declares that "the navigable waters leading to the Mississippi and the St. Lawrence, and the carrying-places between the same, shall be common highways," &c. While it is admitted that some of the articles of compact in that ordinance have been superseded by the admission of the states within the North Western Territory into the Federal Union, it has been held by repeated judicial decisions, that the solemn guaranty referred to is still in full force, and is a perpetual inhibition to such states from authorizing any impediments or obstructions to the free navigation of the water-courses within its scope. Spooner v. McConnell [Case No. 13,245]; Palm-

er v. Cuyahoga Co. [Id. 10,688]; Hogg v. Zanesville Canal & Manuf'g Co., 5 Ohio, 416.

But, in maintaining the paramount jurisdiction of the national government over navigable streams, and the operative force of the guaranty in the ordinance of '87 in regard to them, it does not follow that the states are deprived of all power of legislation. Judge McLean, in the case above cited [Palmer v. Cuyahoga Co.], says: "A state, by virtue of its sovereignty, may exercise certain rights over its navigable waters, subject, however, to the paramount power of congress to regulate commerce among the states." This principle is distinctly recognized in all the cases referred to, whether arising under the commercial power of the general government, or the ordinance of '87. It has never been claimed that the states do not rightfully possess jurisdiction upon and over the navigable water-courses within their limits. Such a claim is clearly in derogation of the sovereignty of the states, and therefore, wholly inadmissible. But, while the right of the states is thus conceded, it is well settled that, in the exercise of their jurisdiction, they shall not infringe on that granted to the national government by the constitution of the United States; and that in reference to the states formed from the North Western Territory, they cannot disregard the provision of the ordinance referred to. This limitation of the power of the states is not inconsistent with their claim of sovereignty; nor does it involve necessarily any conflict of jurisdiction between them and the government of the Union. The states have all the power over their water-courses, which is necessary for local or state purposes. The right of a state to punish crimes committed on its streams, and to authorize and enforce such police regulations as may be necessary for the protection of its citizens, has never been questioned. It is equally clear that a state may adopt such measures, in reference to its water-courses, as are required by its citizens in facilitating trade and commercial intercourse. Hence, they properly execise the right of establishing and licensing ferries, and authorizing the construction of wharves. They may also sanction an apparent obstruction of a navigable stream, by authorizing the erection of dams and locks; for the obvious reason that these are not hindrances to navigation, but are promotive of its benefits. Nor can there be a doubt that it is competent for a state to authorize the erection of a bridge across a navigable stream within its limits. But in all the cases referred to, the power must be exercised subject to the restriction, that the right of free navigation is not essentially impaired. If a bridge is erected, it must be sufficiently elevated to admit of the safe and convenient passage of such boats or vessels as are most advantageously used for the conveyance of travelers or freight upon the river or watercourse spanned by the bridge; or, if not thus constructed, there must be a draw of such size and structure as not materially to infringe the right of free and unobstructed navigation.

It is, however, a question not clear of doubt, whether it is practicable to place a drawbridge across a stream, subject to high floods, and with a rapid current, as is the fact in reference to the Wabash, without materially impairing its safe navigation. This description of bridge is obviously better suited to tidewater streams, or such as have little or no current, in reference to which they may be used with little hindrance to navigation. The jury, however, in this case, may properly limit their inquiry to the question, whether the Terre Haute bridge, with its draw of the size and structure proved, at the time and under the circumstances in which the injury to the plaintiffs' boat was sustained, was an essential impediment to the navigation of the Wabash; and this leads necessarily to the further inquiry, what constitutes such an impediment?

Without going at length into the consideration of this question, it may be stated that slight difficulties occasioning short stoppages, and some loss of time, such as proceed from ferries, locks, dams, and even bridges, as already intimated, are not to be viewed as material obstructions. But, if these involve much loss of time in passing them, or danger of accident or injury to life or property, or the use of extraordinary caution, they do essentially impair the right of free navigation, and subject those placing such obstructions in a navigable stream, to damages for the injuries which they occasion. In reference to the Terre Haute bridge, it will be proper for the jury to give due weight to the evidence of the witnesses, who have had much experience in steamboat navigation on the Wabash, and who say that in their judgment this bridge, especially in descending the river, is a serious obstruction to navigation. There is also a clear preponderance of proof to the effect that it is the more usual practice in descending the river, to round to, some distance above the bridge, and thus by means of a rope made fast at the shore, to let the boat descend stern foremost, slowly through the draw. This process, as stated by some of the witnesses, occupies from ten to thirty minutes; and by some, it is stated the detention is an hour, and sometimes an hour and a half. The court has no hesitation in saying, if the difficulties presented by this bridge are of a character requiring this precaution and this loss of time, it is a material obstruction to navigation. In the Wheeling Bridge Case, before referred to, it appeared that of the great number of steamers upon the Ohio river, there were but seven which could not safely pass under the bridge at ordinary stages of water, without lowering their chimneys. These seven boats could let down their chimneys, but the operation was attended with delay and some danger; or they could navigate the river, though with less speed, with chimneys considerably reduced in height; and yet the supreme court of the United States held, that the bridge was an

essential impediment to navigation—in fact, a public nuisance; and decreed that unless so altered as not to impede the passage of any of the boats used on the Ohio, it must be abated. This decision, emanating from the highest court of the Union, is obligatory on this court, and must be received as the law, so far as applicable to the present case.

Having reference to the principles here stated, it will be the duty of the jury to pass upon the question, whether, from the evidence, the Terre Haute bridge is an impediment to the navigation of the Wabash river. It is insisted by the counsel for the bridge company, that the structure has been erected in compliance with the charter granted by the state of Indiana, and therefore, that the company are not liable for the injury complained of. The charter, as before stated, authorizes the erection of the bridge, with "a convenient draw." This clearly implies that it shall be such a draw as may be used without vexatious delay or loss of time; and also with safety to persons and property. Nothing less than this will meet the requirement of the act of incorporation. And if the jury find the charter has not been complied with, it cannot shield the defendant from liability for the injury sustained by the plaintiff in passing the bridge. Or, if the jury come to the conclusion from the evidence, that the bridge and draw are in accordance with the charter, and yet a material obstruction to navigation, the company are liable, if ordinary skill and care were used in navigating the plaintiffs' boat through the draw. For reasons already stated, it was not competent for the legislature of Indiana to authorize a structure across the Wabash, which would be an essential hindrance to its navigation; and any law conferring such authority, is a nullity. It will therefore be a proper inquiry for the jury, whether the plaintiffs' boat, in passing the bridge, was managed with ordinary skill and caution. For, conceding the bridge to be an unlawful obstruction, yet if the plaintiffs' injury is clearly referable to the reckless and unskilful management of the plaintiffs' boat, the company are not responsible for such injury. On this point, as on all others involving the weight and credibility due to the witnesses, the jury are the exclusive judges. If the evidence of the pilot who was at the wheel, and of others connected with the boat, is entitled to credit, the proof is satisfactory that the boat was managed with skill and caution. She was not let down stern foremost by a rope, as was the more usual way of passing the draw; nor is it regarded as essential to the plaintiffs' right to recover for an injury sustained in passing the draw, that such a precaution should have been used. Some of the witnesses express the opinion that this is the safer course, while others, having skill and experience in the navigation of the Wabash, say that neither prudence nor safety requires it. The pilot of the boat has testified very

intelligently, and with apparent candor, and says he did not consider it necessary to pass the draw stern foremost. He also says that great care and caution were observed in passing through the draw, and that the injury to the boat was not the result of either carelessness or want of skill. He thinks the boat would have passed safely through the draw, but for a strong wind which suddenly struck her, and caused her to veer from the course he was steering. In this statement the pilot is corroborated by several of the plaintiffs' witnesses, while most of the witnesses for the defendant say they have no recollection that there was any wind, exceeding a moderate breeze. This is not viewed as a material point in this case, as the liability of the bridge company is in no way affected by the state of the wind, or its influence in causing the collision. If the bridge is an unlawful obstruction, and the plaintiffs used ordinary care and skill in passing it, the company are responsible for the injury, irrespective of the agency of the wind. And this for the obvious reason that, wind or no wind, the injury could not have been sustained, but for the fact that the bridge was there.

It is proper here to remark, in reference to the pilot of the plaintiffs' boat, that the evidence is satisfactory as to his professional character. He had served in that capacity for some years, on the Wabash, and it is in proof that he is esteemed a safe, prudent and skilful pilot. But notwithstanding this evidence of general good professional reputation, if in this particular case he evinced recklessness and want of skill, and the injury to the plaintiffs' boat is attributable to that cause, they must bear the consequences of his misconduct. In this case, a large proportion of the evidence for the plaintiffs is in the form of depositions of persons who were on the boat at the time of the accident, and of others experienced in the navigation of the Wabash, who have been examined as experts. These depositions were taken at Cincinnati, without previous notice to the opposite party, and without the attendance of his counsel. This mode of taking testimony is expressly authorized by an act of congress. It is liable to the objection that the opposite party is precluded from the opportunity of cross-examining the witnesses, and thus testing the truthfulness of their statements. It is, however, the right of the party against whom depositions thus taken are to be used, to re-call and re-examine the same witnesses, if he deems it necessary. The defendants in this case have not availed themselves of this right; and the plaintiffs' depositions are therefore committed to the jury, as taken by the other party, without any cross-examination by the defendant. Under these circumstances, it is insisted by the defendant's counsel that these depositions should be viewed with suspicion, and that they are entitled to very

little weight by the jury. On this point. it is only necessary to remark, that these depositions are by law admissible to the jury. as evidence; and, although they would be entitled to greater weight, if taken upon notice to the other party, and with an opportunity for cross-examination, they are nevertheless entitled to credit, unless otherwise impeached.

It has been before noticed that a part of the evidence for the plaintiffs in this case, consists in the opinions of experts—those experienced in and familiar with the navigation of the Wabash—as to the practical effect of the Terre Haute bridge upon the navigableness of that river, and the correctness of the professional conduct of those entrusted with the management of the plaintiffs' boat in passing the bridge. In reference to this description of evidence, it is only necessary to remark that, for obvious reasons, that those best acquainted with any particular art, profession or business, in all matters directly concerning them. are accounted more satisfactory and reliable witnesses. than those who have no such skill or experience. Hence it is well settled, that the testimony of intelligent and credible experts is entitled to the most respectful consideration. The principle here stated applies as well to navigation as to any other art or occupation.

It only remains for the court to say, that if the jury find the plaintiffs are entitled to their verdict, the amount of damages to be awarded is wholly with them. The actual expenses of repairing the injury sustained by the plaintiffs' boat forms, of course, an element in estimating the amount. But it is moreover proper to bring to the notice of the jury, a late decision of the supreme court of the United States,[2] having a direct bearing on the question of damages in this case. That court has held, that in an action for an injury by collision with another boat, the boat of the plaintiff not being in fault, he was entitled to compensation, in damages, for the profits his boat would have made during the time necessarily lost in repairing the injury sustained. No reason is perceived why the same principle does not apply to the present case. If, therefore, the jury find for the plaintiffs, they should include in their verdict, the amount of the probable earnings of the plaintiffs' boat during the time she was delayed in making the repairs necessary to refit her for service. This amount will be settled by the evidence before the jury, on that point.

The jury returned a verdict for the plaintiffs, assessing their damages at $1.000. A motion for a new trial by the defendants was overruled.

---

[2] The case referred to is that of Williamson v. Barrett. 13 How. [54 U. S.] 101. The same principle was decided in that case by the circuit court of Ohio. Barrett v. Williamson [Case No. 1.051.]