## Zebedee Macomber v. Jerome E. Nichols.

*Injury: Recovery: Lawful acts: Common rights.* Injury alone will not support an action on the case; there must be a concurrence of injury and wrong; and if the act be not unlawful in itself, then unless done in a manner, at a time or under circumstances, which render it wrongful or lacking in due regard for the rights of others, there can be no liability for any injury that may result.

*Highways: Public use: Restrictions: Inconveniences incident to reasonable use.* A highway is a public way for the use of the public in general, for passage and traffic, without distinction; and the restrictions upon its use are only such as are calculated to secure to the general public the largest practicable benefit from the enjoyment of the easement, and inconveniences such as are only incident to a reasonable use under impartial regulations are not actionable.

MACOMBER·*v.* NICHOLS.

*Highways: Horses: Superior privilege: Improved methods of locomotion.*
Persons making use of horses as the means of travel or traffic by the highways have no rights therein superior to those who make use of the ways in other permissible modes; improved methods of locomotion are admissible, and cannot be excluded from existing public roads if not inconsistent with the present methods.

*Highways: Unsightly objects: Frightening horses of ordinary gentleness.* In an action for injuries caused by a horse taking fright on the highway at an engine being propelled by steam, it is error to permit the right of recovery to turn upon whether the engine was calculated to frighten horses of ordinary gentleness; the bringing of an unsightly object into the common highway is not necessarily a wrong because of its tendency to frighten horses, any more than the construction of a bridge over a river is a wrong because of its tendency to delay vessels.

*Highways: Horses: Steam locomotives: Superior privilege: Negligence.* If one in making use of horses as a means of locomotion on the highway is injured by the act or omission of another using a steam locomotive, the question is not one of superior privilege, but whether under all the circumstances there is negligence imputable to some one, and if so, who should be accountable for it.

*Highways: Engines: Negligence: Reasonable management: Question of fact.* The engine as a means of locomotion in the highway is not necessarily a nuisance, and the question whether its use as such has in a particular instance been so negligently managed to the injury of others as to give rise to a right of action, is one of fact for the jury as a question of reasonable conduct and management on the part of both parties.

*Heard April 12.    Decided June 13.*

Error to Calhoun Circuit.

*T. G. Pray,* for plaintiff in error, cited: *14 Gray, 242; 35 N. H., 257; 7 Barb., 508; 13 Barb., 658; Redf. on Ry's, 520; 28 Mich., 32; 1 Allen, 190.*

*May, Buck & Fraser,* for defendant in error, cited: *Congreve v. Smith, 18 N. Y., 79; Conklin v. Thompson, 29 Barb., 218; People v. Cunningham, 1 Den., 524; Bartlett v. Hooksett, 48 N. H., 18; Knight v. Goodyear Co., 38 Conn., 438; Ayer v. Norwich, 39 Conn., 376; Young v. New Haven, Ib., 435; Foshay v. Glen Haven, 25 Wis., 288; Morse v. Richmond, 41 Vt., 435; Pa. R. R. v. Barnett, 59 Penn. St., 259; Lake v. Milliken, 62 Me., 240; Darling v. Westmoreland, 52 N. H., 401; Mahoney v. R. R. Co., 104 Mass., 73; Thomas v. Telegraph Co., 100 Mass., 157; Baker v. Portland, 58 Me., 199.*

MACOMBER *v.* NICHOLS.

COOLEY, CH. J:

This is an action on the case, in which Nichols sought to recover for an injury occasioned by his horse taking fright as he was driving along the public highway near Battle Creek about 9 o'clock in the evening of September 9, 1874. The fright was caused by an engine mounted on wheels, which the defendant was moving along the same highway by means of the steam power by which it was operated. The engine was used mainly for threshing, and was moved from place to place for that purpose.    The traveled part of the highway at the place of the accident was about thirty feet in width, and Macomber gave evidence tending to show that he was moving on the extreme right of this traveled way, and that he shut off steam and stopped the engine when the horse was seen approaching.    Each party claimed to be free from negligence himself, and charged negligence upon the other.    The following instructions, among others, were given to the jury at the request of Nichols:

"1.  If you find that about the 9th day of September last the plaintiff was driving a well-broken and gentle horse in the public street or highway in Battle Creek, in this county, that the defendant by running a steam engine along said highway caused plaintiff's horse to run away, and that plaintiff was thereby injured, either in person or property, and that such steam engine was well calculated to frighten horses of ordinary gentleness, then the plaintiff is entitled to recover.

"2.  The right to travel in a public highway is a right which is common to all, and no person has the right to impede or render dangerous the travel of the highway by any other person.

"3.  A party placing upon the highway any vehicle unusual, and calculated from its appearance and mode of locomotion to frighten horses of ordinary gentleness, is liable for all damages resulting therefrom.

"4.  It is no defense to this suit that the defendant was

using the steam engine in the transaction of his lawful and legitimate business, if his use of the highway in such business rendered the highway dangerous for others to travel.

"5. The defendant had no right to run his steam engine on the public street or highway if such engine was calculated to frighten horses of ordinary gentleness."

Other instructions of similar import were given, but the foregoing are all that need be stated to make clear the view which was taken by the circuit judge of the main point in controversy.

It is hardly probable that when the circuit judge told the jury that no person has a right to impede or render dangerous the travel of the highway by any other person, he intended them to understand this language literally and without qualification. Almost any proper use of a highway may under some circumstances impede the use by another, and possibly render it dangerous. The appearance of any unusual object in the streets may have some tendency to add to the dangers of travel by means of horses or other animals, and there is always more or less danger that a high spirited horse, or indeed any other horse, may become unmanageable, and people who are using the highway be exposed to risks in consequence. But it does not follow that the driver of such a horse is responsible for the consequences because of his bringing him into the street impeding or rendering dangerous the travel by others. The question is one of reasonable use and reasonable care, and if these are observed he is not chargeable. Probably the circuit judge did not intend to be understood as going beyond the requirement of reasonable care and caution on the part of all persons making use of the public ways; and this instruction, if it stood alone, would not have been likely to mislead.

But the instruction that any one placing upon the highway a vehicle unusual, and calculated from its appearance and mode of locomotion to frighten horses of ordinary gentleness, is liable for all damages resulting therefrom, is not

only erroneous, but it could not fail to mislead.  It was an instruction, in substance, that the placing of such a vehicle in the highway is always, and under all circumstances, an illegal act; a wrong in itself, for which an action will lie on behalf of any one who may chance to be injured in consequence.

Injury alone will never support an action on the case; there must be a concurrence of injury and wrong.  If a man does an act that is not unlawful in itself he cannot be held responsible for any resulting injury unless he does it at a time or in a manner or under circumstances which render him chargeable with a want of proper regard for the rights of others.  In such a case the negligence imputable to him constitutes the wrong, and he is accountable to persons injured, not because damage has resulted from his doing the act, but because its being done negligently or without due care has resulted in injury.  If the act was not wrongful in itself, the wrong must necessarily be sought for in the time or manner or circumstances under which it was performed, and injury does not prove the wrong, but only makes out the case for redress after the wrong is established.

Persons making use of horses as the means of travel or traffic by the highways have no rights therein superior to those who make use of the ways in other modes.  It is true that locomotion upon the public roads has hitherto been chiefly by means of horses and similar animals, but persons using them have no prescriptive rights, and are entitled only to the same reasonable use of the ways which they must accord to all others.  Improved methods of locomotion are perfectly admissible, if any shall be discovered, and they cannot be excluded from the existing public roads, provided their use is consistent with the present methods.

A highway is a public way for the use of the public in general, for passage and traffic, without distinction.—*Starr v. C. & A. Railroad Co.*, *4 Zab.*, *597*.   The restrictions upon its use are only such as are calculated to secure to

the general public the largest practicable benefit from the enjoyment of the easement, and the inconveniences must be submitted to when they are only such as are incident to a reasonable use under impartial regulations. When the highway is not restricted in its dedication to some particular mode of use, it is open to all suitable methods; and it cannot be assumed that these will be the same from age to age, or that new means of making the way useful must be excluded merely because their introduction may tend to the inconvenience or even to the injury of those who continue to use the road after the same manner as formerly. A highway established for the general benefit of passage and traffic must admit of new methods of use whenever it is found that the general benefit requires them; and if the law should preclude the adaptation of the use to the new methods, it would defeat, in greater or less degree, the purpose for which highways are established.

It is not long since the great highways by water were supposed to be of such transcendent importance as to entitle those who made use of them to superior rights over those making use of other highways which might intersect them. Accordingly bridges over navigable waters, when permitted at all, were required to be so constructed as to secure to vessels an uninterrupted passage, and the travel and traffic by land was compelled to await the convenience of travel and traffic by water. But this rule was never inflexible; it was a rule that must yield to circumstances; and it was never a matter of course that the master of a vessel was entitled to a remedy as for a legal injury when the convenience of one making use of a bridge was preferred to his. The case was one in which rights must be harmonized, and unavoidable inconveniences to one party or the other must be submitted to as something inseparable from any employment of the powers of government to provide or regulate the channels for travel and commerce. There may be, in any case in which a highway by land intersects a highway by water, questions of difficulty as to whether, in view of all the cir-

cumstances, the one or the other is of the greater importance, and whether the general public would be better accommodated by compelling those making use of the one to submit to temporary inconvenience for the accommodation of those passing or moving property by the other; or, on the other hand, by recognizing in the former such paramount rights as are not to be narrowed or encroached upon by any rights possessed by the latter. Over unimportant streams a bridge may do far more to accommodate the public than the navigable privilege; and the unreasonableness of a refusal to recognize the fact when legal rights are found to depend upon it, is very manifest. The paramount rights which have been asserted on behalf of vessel owners as against railroad companies have been very distinctly denied, the court, holding that they must submit to any incidental inconvenience that may be inseparable from allowing to the public the benefit, of improved locomotion by land.—*Works v. Junction R. R., 5 McLean, 425, 438; Spooner v. McConnell, 1 McLean, 337, 379; Jolly v. Terre Haute Bridge Co., 6 McLean, 237, 242; Miss. & Mo. R. R. Co. v. Ward, 2 Black, 485.* It follows that a bridge over a navigable stream is not of necessity a nuisance; it may or may not be such, according to the circumstances; and the vessel owner who brings his suit for an injury occasioned by it must show the circumstances which make the injury fairly chargeable to some one as a wrong.

But the bringing of an unsightly object into the common highway is no more of a wrong because of its tendency to frighten horses of ordinary gentleness, than is the construction of a bridge over a river a wrong because of its tendency to delay vessels. The one may be a wrong under some circumstances, and so may the other; but it is equally true that both may be proper and lawful under other circumstances. It would be difficult to pass through the streets of our large towns without encountering objects moving along them which are well calculated to frighten horses of ordinary gentleness until they become accustomed to them; but

which nevertheless are used and moved about for proper and lawful purposes. The steam engine for protection against fire may be mentioned as one of these; and though this is usually owned and moved about by public authority, there can be no doubt of the right of a private individual to keep and use one for his own purposes, and to take it through the streets when necessary. But other things which are sometimes moved about on wheels along the streets are equally alarming to horses when first used. Wild animals collected and moved about the country for exhibition are always more or less likely to frighten domestic animals, but they may nevertheless be lawfully taken on the public highways under proper precautions.

It has justly been remarked by the supreme court of Illinois in a case involving the right to make use of steam as a means of locomotion in the public streets, that "a street is made for the passage of persons and property, and the law cannot define what exclusive means of transportation and passage shall be used." "To say that a new mode of passage shall be banished from the streets, no matter how much the general good may require it, simply because the streets were not so used in the days of Blackstone, would hardly comport with the advancement and enlightenment of the present age."—*Moses v. P., F. W. & C. R. R. Co.,* *21 Ill., 516, 523.* In some of the large cities of the country sufficient means of transit by the old methods have become practically out of the question, and steam power is permitted as a matter of necessity, not only as a means of moving vehicles by the side of teams in the street, but also over their heads, where the liability to cause fright would perhaps be still greater. Horses of ordinary gentleness would at first be liable to take fright, but after a time they become accustomed to the objects that at first are so fearful to them, just as in the country they become accustomed to see trains of cars passing near them along the ordinary railways, which sometimes for a considerable distance run in immediate proximity to the common roads. Horses may be, and often

are, frightened by locomotives in both town and country, but it would be as reasonable to treat the horse as a public nuisance from his tendency to shy and be frightened by unaccustomed objects, as to regard the locomotive as a public nuisance from its tendency to frighten the horse. The use of the one may impose upon the manager of the other the obligation of additional care and vigilance beyond what would otherwise be essential, but only the paramount authority of the legislature can give to either the owner of the horse or the owner of the locomotive exclusive privileges. If one in making use of his own means of locomotion is injured by the act or omission of the other, the question is not one of superior privilege, but it is a question whether, under all the circumstances, there is negligence imputable to some one, and if so, who should be accountable for it.

In the circuit court instructions were given on the subject of mutual negligence, which are probably unexceptionable; but they seem to have been entirely unimportant, because the other instructions, which treated the use of the engine in the public highway as unlawful, necessarily disposed of the case. We think the instructions last mentioned were erroneous. The engine as a means of locomotion in the highway was not necessarily a nuisance. It might possibly be a nuisance at some times, and under some circumstances, and even where it might be proper to make use of it the manager or owner might be liable to damages for negligence in management to the injury of others. But the question in any such case must be one of fact; a question of reasonable conduct and management on the part of both parties; and should be submitted to the jury as such.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.