McCrary, C. J.
This case was tried at the last term, and, at the request of Judge Krekel, the motion for a new trial has been heard before a full bench.
The plaintiff was, on the twenty-seventh of March, 1876, the owner of the steamboat Joe Kinney, and engaged in navigating the Missouri river with said vessel. The defendant is the proprietor of a railroad bridge across the Missouri river at Kansas City, which was constructed under the act of congress approved July 25, 1866. On the day above mentioned the said steamboat was damaged, in- attempting to pass said bridge, in the course of one of her voyages, by being driven by the current against one of the piers thereof. Plaintiff claims to have exercised due diligence, and charges that the piers of said bridge, as well as certain pontoons connected therewith, were obstructions to the navigation of said river, and wrongfully maintained therein.
The act of congress under which the said bridge was constructed provides as follows:
“Section 2. And be it further enacted, that any bridge built under the provision of this act may, at the option of the company building the same, be built as a draw-bridge, with a pivot or other form of draw, or with unbroken or continuous spans: Provided, that if said bridge shall be made with unbroken and continuous spans, it shall not be of less elevation, in any case, than 50 feet above extreme high-water mark, as understood at the point of location, to the bottom chord of the bridge; nor shall the spans of said bridge be less than 250 feet in length, and the piers of said bridge shall be parallel with the current of the river, and the main span shall be over the main channel of the river, and not less than 300 feet in length; and provided, also, that if any bridge built under this act shall be constructed as a pivot drawbridge, with a draw over the main channel of the river at an accessible and navigable point, and with spans of not less than 160 feet in length, in the clear, on each side of the cen *288 tral or pivot pier of the draw, and the next adjoining spans to the draw shall not he less than 250 feet; and said spans shall not be less than 30 feet above low-water mark, and not less than 10 feet above extreme high-water mark, measuring to the bottom chord of the bridge, and the piers of said bridge shall be parallel with the current of the river; and provided, also, that said draws shall be opened promptly, and upon reasonable signal, for the passage of boats whose construction shall not be such as to admit of their passage under the permanent spans of said bridge, except when trains are passing over the same; but in no case shall unnecessary delay occur in opening the said draw, during or after the passage of trains.”
The act from which this section is copied authorizes the building of a number of bridges across the Mississippi river, and in its tenth section provides: “And be it further enacted, that any company authorized by the legislature of Missouri may construct a bridge across the Missouri river, at the ■ city of Kansas, upon the same terms and conditions provided for in this act.”
The third section of the same act provides as follows: “And be it further enacted, that any bridge constructed under this act, and according to its limitations, shall be a lawful structure.”
The motion for a new trial is based upon alleged errors contained in the charge given by the court to the jury. These will be considered in the order in which they are presented in the brief of counsel for defendant.
1. It is said that the court erred in construing the act of congress, and particularly that portion of the act which relates to the width of the passage-way between the piers of the bridge. Upon this subject the court instructed the jury as follows:
“The law regarding the Kansas City draw-bridge under consideration is that it shall have spans of not less than 160 feet in length in the clear on each side of the central or pivot pier of the draw. This means that the open span between the piers must be 160 feet when measured at right angles *289 with the pier. If you shall find from the testimony that the Kansas City bridge was built diagonally across the river, and not at right angles with the piers of the bridge, the measurement along the line of the track of the railroad or the chord of the bridge is not the proper measurement, and the distance of 160 feet thus obtained is not a compliance with the act of congress requiring 160 feet in the clear, and to the extent of this difference between a line at right angles with the piers and the measurement along the track or chord of the Kansas City bridge, it is an unauthorized structure; so far, at least, as any question pertaining to and connected with this case is concerned. Though you may find from the testimony that the width between the piers as constructed is less than the act of congress requires, yet this violation of law by defendant in the construction of its bridge is not available to plaintiff in recovering damages unless it has caused or contributed to the injury by plaintiff complained of.”
The contention of the defendant is that the distance of 160 feet in length in the clear on each side of the central or pivot pier of the draw must necessarily be measured along the track of the railroad or the chord of the bridge. The construction given to the law by the court in its charge requires that the measurement should be across the channel, and if the superstructure was found to be not at right angles to the current, then the measurement along the line of the bridge was not the proper one. In construing the act of congress we must look to the spirit and reason of the law. It was an act authorizing a structure to be placed in one of the navigable rivers of the United States. The purpose of the second section was to reserve, for the purposes of navigation, a certain amount of open space; or, in other words, space “in the clear,” wholly unobstructed and available for the passage of vessels. To accomplish this purpose the law requires that the piers must be parallel with the current of the river.
If it be granted that a measurement along a line which deviates from a course directly across the channel is the proper one, then it would follow that the actual passage way might be less than that required by the act. The greater the *290 deviation from such a direct line, the less would he the avail" able space between the piers. Such a construction of the act would defeat the main purpose which congress had in view in its enactment. I am, therefore, clearly of the opinion that the construction of the act contained in the above-quoted extract from the charge given by the court to the jury was correct.
2. It is said that the bridge was an authorized structure, being erected at an authorized place and in an authorized manner, and that this constitutes complete immunity to defendant. The answer to this suggestion has been anticipated in what is said above. The fact that the bridge was constructed under authority granted by the act of congress of July 25, 1866, does not render it a legal structure, except in bo far as it is found to be “according to its limitations.” Such is the express provision of section 3 of that act. Besides, it is well settled that if the powers granted by the act were exceeded, or were exercised in a manner different from that provided in the grant of authority, the grant will be no protection. Dugan v. Bridge Co. 27 Penn. St. 303; Judy v. Terre Haute Bridge Co. 6 McLean, 237; Columbus Ins. Co. v. Curtenius, Id. 209.
3. It is insisted that the court erred in treating the bridge as a nuisance per se, and applying the common-law rule in such cases. By reference to the charge it will be Been that the court used the following language: “Though you may find from the testimony that the width between the piers as constructed is less than the act of congress requires, yet this violation of the law by the defendant, in the construction of its bridge, is not available to plaintiff in recovering damages, unless it caused or contributed to the injury by plaintiff complained of.”
I a.1'., of the opinion that the court here states the true rule upon the subject. At all events the charge seems to have been, in this respect, all that the defendant had a right to ask. It is not necessary now to determine whether the bridge in question is so far unlawful and unauthorized as to be subject to removal as a public nuisance- It may be that in a *291 case presenting that question it might he held that the obstruction to navigation is so slight as to be tolerated, in view of the greater aid to commerce rendered by the structure. This point is not now before us, and no opinion is expressed upon it. It is sufficient to say that if the structure is not according to the limitations of the act of congress it is so far unauthorized, and the defendant is, therefore, liable for any injury to the plaintiff’s vessel which, was caused, or contributed to, by the unlawful structure; and this is all that was said by the court in charging the jury.
4. It is contended that, although the measurement sanctioned by the court should be adopted as the true construction of the act of congress, it does not follow that the plaintiff can recover, and that the charge is erroneous and misleading in so instructing the jury. The answer to this is that the court did not instruct the jury that the plaintiff must necessarily recover if the distance between the piers was less than that required by law, The instruction was, as already shown, that in order to recover the plaintiff must show that the width between the piers was less than the act of congress requires, and also that the unlawful structure “caused or contributed to the injury by plaintiff complained of.”
Counsel for defendant insist that it was not claimed, on the trial, that' the injury resulted from the unlawful construction of the bridge. They say that the gravamen of the charge is that the sinking of the pontoons caused a cross current to set in towards the bridge, the effect of which was to throw the plaintiff’s boat over on the pier. It is quite evident, from the record, that the plaintiff charged the defendant with responsibility for two unlawful obstructions in the river, the combined effect of which was to produce the injury to the steamboat Joe Kinney, notwithstanding due diligence on the part of the officers and crew in charge of her. These were, first, the sunken pontoons; and, secondly, the bridge pier. It is also apparent that there was evidence tending to support the plaintiff’s theory in this regard; and, based upon that evidence, the court instructed the jury, with reference to the bridge, in the language above quoted; and, regarding the *292 pontoons, further instructed them as follows: “Regarding tho pontoons, at one time kept and maintained hy the defendant company, extending from the south pier up the south bank of the river, testified to, you are instructed that the company owning the bridge was not, by law, required to put them there or keep them in position, yet, if the owners of the bridge, for the protection thereof, or for any reason, kept them there, and they were, from any cause, sunk, and thereby diverted the current of the river from its usual and ordinary course or channel, thus causing difficulty or danger in the approaching of the bridge draw by boats, and that such change of the current caused or contributed to the collision of plaintiff’s boat with the draw-rest of the bridge, you are authorized to find for the plaintiff, provided the plaintiff company, navigating its boats on the occasion of the collision, did so with care and skill, and did not contribute to the injury by its own neglect or improperly handling its vessel. Those navigating the river are under no obligation to remove wrecks which may be made in the ordinary and proper course of navigation. While this is undoubtedly the law, it is also the law that he who, for his own benefit, and not for the purpose of navigation or commerce, uses any navigable part of a river, is liable in damages to the party injured if such use causes a diversion and change in the ordinary course of the channel of the river, and thereby increases the difficulty and danger of navigation, and injury results therefrom.” The charge, upon this branch of the case, seems to me to have been in all respects correct.
5. It is insisted by the counsel for defendant that the sinking of the pontoons was caused by unavoidable accident, and that, under the circumstances, the defendant cannot be held responsible for the consequences. Assuming that the pontoons were, while kept afloat, lawful and proper structures, and no impediment to navigation, it would probably follow that in the event of their being sunk by unavoidable accident the defendant would be entitled to a reasonable time in which to raise or remove them. But as it appears from the evidence that the pontoons in question were sunk in the winter of 1873-4, more than two years before the accident com- *293 plained of, and that no attempt was made by defendant to raise or remove them, I am clearly of the opinion that the defendant was responsible for any injury resulting from their presence in the channel at the time plaintiff’s vessel was injured.
6. Counsel for defendant also insists that the court erred in that part of the charge to the jury which refers to the question of contributory negligence on the part of the plaintiff. The language of the court upon this subject is as follows :
“While the defendant company were under no legal obligation to keep pontoons from the bridge pier to the banks of the river, as testified to, yet if for any reason they kept them there, and they were sunk by ice or otherwise, the company was bound to remove them; and if it failed to do so, and a change of current was caused by this neglect, and the plaintiff’s boat was injured in consequence of such change, you are justified in finding for plaintiff, unless unskilfulness or neglect on the part of plaintiff in handling his boat caused or contributed to the collision.”
This, certainly, left to the jury fully and fairly the question of contributory negligence. A more labored discussion of that subject could hardly have made clearer the true rule upon the subject.
7. It is insisted that it was necessary for plaintiff to prove notice to abate the alleged nuisance. There was some proof tending to show that notice was given to the agent of defendant having charge of the bridge; but whether notice to the agent, in this case, was notice to the principal, is a question upon which counsel differ. I do not think it necessary to consider that question, for the reason that, in my opinion, no notice was required. The rule requiring notice to abate, before an action for damages can be maintained, does not apply to the case of an obstruction to a navigable river or other public highway. It applies only to cases where the complaint is against the grantee of land on which a previous owner has erected a nuisance. He who erects a nuisance, even on his own land, is not entitled to notice. Ray v. Sel *294 lers, 1 Duv. 254; Slight y. Gutzlaff, 35 Wis. 675; Cochocton v. R. Co. 51 N. Y. 573.
But the person who allows the continuance in its original state of a nuisance on his own land, erected there by his grantor, is entitled to notice. Woodman v. Tufts, 9 N. H. 91; Snow v. Cowles, 22 N. H. 296; Johnson v. Lewis, 13 Conn. 303.
For full discussion of the whole subject and citation of authorities, sea Plumb v. Harper, 14 American Decisions, 333, 338.
It is entirely clear that the doctrine of notice has no application to the present case.
8. It is insisted that the charge of the court as to the measure of damages was erroneous. The charge upon this point is as follows:
“Regarding the rule of damages, in case you find for plaintiff, you are instructed to allow the amount shown to have been paid by plaintiff, for repairs, together with 6 per cent, interest from the day of the beginning of the suit, which was on the sixteenth day of August, 1876; and for such a reasonable amount of charter rent, during the time the boat was repairing, as you may deem right under the testimony.
To this charge, in itself considered, no exception can be taken. But counsel insist that all the witnesses testified that they arrived at the charter value from the earnings of like boats in the same trade, it not being shown that any boats on the Missouri river were being chartered, or that there was any charter value established on that river.
The true rule of damages in such eases is that the plaintiff shall recover the loss necessarily incurred in repairing the injured vessel, and also for the use of the boat during the time necessary to make the repairs and fit her for business.
Williamson v. Barrett, 13 How. 110; The Baltimore, 8 Wall. 387; The Cayuga, 14 Wall. 278.
The evidence objected to seems to have been clearly admissible for the purpose of fixing the amount of plaintiff’s damages, within this rule. If no boats were being chartered on the Missouri river, and therefore no established charter value *295 could be shown, it was certainly proper to show the value of the use of the vessel from the earnings of like boats in that river.
The motion for new trial must be overruled.
Krekel, J., concurs.