## TEXARKANA & FT. S. RY. CO. v. PARSONS.

(Circuit Court of Appeals, Eighth Circuit. April 17, 1896.)

### No. 698.

1. NAVIGATION—OBSTRUCTION—UNAUTHORIZED BRIDGE.

One P. brought an action against the T. Ry. Co. for damages for detention of his steamer and barges, caused by a bridge erected by the defendant across a navigable river, and by the accumulation of driftwood against the piers of such bridge. It appeared that congress had authorized the railway company to construct a bridge, by an act which required, among other things, that the openings of the draw of such bridge should be 130 feet in the clear, and that the plans should be approved by the secretary of war, and which provided that the bridge should not be built until such plans had been so approved. It was conceded that the openings of the draw were only 125 feet in the clear, and no evidence was offered to show that the plans had ever been submitted to, or approved by, the secretary of war. *Held* that, upon this state of the proof, the bridge was an illegal structure and a public nuisance, and the railway company was liable for any damages resulting therefrom.

2. SAME—LIABILITY FOR DAMAGE.

The court charged the jury that, if they found that the narrowing of the space in the draw caused the driftwood to accumulate, the railway company was responsible therefor, and, if that was the natural result of the narrowing, they need not particularly investigate any theory that it did not cause the accumulation. *Held*, that this instruction was more favorable to the railway company than it had a right to ask, and it could not complain of it as error.

In Error to the District Court of the United States for the Eastern District of Arkansas.

On the 1st day of May, 1894, the defendant in error, Peter Parsons, brought suit against the plaintiff in error, the Texarkana & Ft. Smith Railway Company, in the district court of the United States for the Eastern district of Arkansas, Texarkana division, to recover $925 damages for an alleged unlawful detention of a steamboat and two barges with which the defendant in error was navigating the Red river, a public navigable river of the United States, by means of a bridge across the river owned and maintained by the plaintiff in error. The bridge was erected by the Kansas City, Texarkana & Gulf Railway Company and was afterwards acquired by the plaintiff in error. The defendant below claimed that the bridge was constructed under authority of the act of congress approved May 1, 1888 (25 Stat. 105–107, c. 209) and conformably to the requirements of that act. The plaintiff denied this, and averred that the bridge was not constructed and maintained according to the requirements of the act of congress, in the following particulars: "That the secretary of war never approved the construction of said bridge; neither was it built under his supervision; neither was it constructed with a draw or pivot pier and span over the main channel of said river; neither are the openings on either side of said pivot pier as much as one hundred and thirty-five feet in the clear; neither are the spans as much as ten feet above extreme high water; neither was the superstructure of said bridge, nor the piers, nor the draw rests, constructed, nor have they been maintained, at right angles to the current of said river." The complaint further alleged that "the said defendant so maintained its said bridge as to obstruct the free navigation of said river by negligently permitting the drift in said river to lodge and accumulate against the piers of said bridge where said draw is located, and said drift extended back to the southern bank of said river, above said bridge, so that it was impossible for plaintiff's tug and barges to pass through said draw, and along up said river, by reason of said drift, and there being no draw over the main channel, on the northern side, it was impossible for plaintiff's said tug and barges to pass along and up said river." It was averred that by reason of the unauthorized and de-

fective construction of the bridge, and the negligence of the defendant in permitting the driftwood to accumulate against the piers of the bridge, the draw thereof could not be opened, and that, if the draw could have been opened, the driftwood which had been negligently allowed to accumulate against the piers of the bridge would have prevented the plaintiff's boat and barges from ascending the river for freight awaiting them at points above the bridge for transportation to points below the bridge. The defendant alleged that the bridge was constructed in accordance with the requirements of the act of congress, and was therefore a legal structure, and denied the negligence. The act of congress under which it was claimed the bridge was constructed reads as follows:

. "Be it enacted by the senate and house of representatives of the United States of America in congress assembled, that the Kansas City, Texarkana and Gulf Railway Company, its successors or assigns, be, and is hereby, authorized to construct and maintain a railway bridge, and approaches thereto, over and across Red river, in the state of Arkansas, at or near the point where the eastern boundary line of the state of Texas intersects the said river and the state line of the state of Arkansas; and also a railway bridge, and approaches thereto, over and across Little river, in the said state of Arkansas, at such point as may be selected by said railway company for crossing said river with its railroad line. Said bridges shall be constructed to provide for the passage of railway trains, and, at the option of said company, may be used for the passage of wagons and vehicles of all kinds, for the transit of animals, and for foot-passengers, for such reasonable rates of toll as may be approved from time to time by the secretary of war. That if the said bridges, or either of them, over the said rivers shall be made with unbroken and continuous spans, there shall be at least one span of a height of not less than eighty feet above low water or fifty feet above highest water, as understood at the point of location, measured to the lowest part of the superstructure of said bridge; and said span shall have a clear opening of at least two hundred feet between the piers, measured at right angles to the current, and shall be over the main channel of the river, and the bridge or bridges shall be at right angles to, and the piers parallel with, the current of the river. And if the bridges, or either of them, over the said rivers, shall be constructed as draw or pivot bridges, the draw or pivot pier shall be over the main channel of the river at an accessible navigable point, and the openings on each side of the pivot-pier shall not be less than one hundred and thirty feet in the clear, unless otherwise expressly directed by the secretary of war, and if so directed shall be according to such direction, and, as nearly as practicable, the said openings shall be accessible at all stages of water, and the spans shall be not less than ten feet above extreme high water, as understood at the point of location, to the lowest part of the superstructure of the bridge, and the piers and draw rests shall be parallel with, and the bridge or bridges at right angles to, the current of the river or rivers; and no riprap or other outside protection for imperfect foundations shall be permitted to approach nearer than four feet to the surface of the water at its extreme low stage, or otherwise to encroach upon the channelways provided for in this act; and all and each of said draws shall be opened promptly upon reasonable signal for the passing of boats; and said company shall maintain, at its own expense, from sunset till sunrise, such lights or other signals on said bridges as the light-house board may prescribe."

"Sec. 2. That any bridge built under this act, and subject to its limitations, shall be a lawful structure, and shall be recognized and known as a post-route, upon which also no higher charge shall be made for the transmission over the same of the mails, the troops, and the munitions of war of the United States than the rate per mile paid for the transportation over the railroad or public highways leading to the said bridge; and it shall enjoy the rights and privileges of other post-roads in the United States."

"Sec. 5. That the bridges authorized to be constructed under this act shall be built and located under and subject to such regulations for the security of navigation of said rivers as the secretary of war shall prescribe; and to secure that object the said company or corporation shall submit to the secretary of war, for his examination and approval, a design and drawings of said bridges, and each of them, and a map of the location, giving, for the

space of one mile above and one mile below the proposed location, the topography of the banks of the river, the shore-lines at high and low water, the direction and strength of the currents at all stages, and the soundings, accurately showing the bed of the stream, the location of any other bridge or bridges, and shall furnish such other information as may be required for a full and satisfactory understanding of the subject; and until the said plan and location of the bridge or bridges are approved by the secretary of war, the bridge or bridges shall not be built; and should any change be made in the plan of said bridges, or either of them, during the progress of construction, such change shall be subject to approval of the secretary of war. And the said structures shall be changed at the cost and expense of the owners thereof, from time to time, as the secretary of war may direct, so as to pre-·serve the free and convenient navigation of said rivers, and the authority to erect and continue any and all of said bridges shall be subject to revocation by the secretary of war whenever the public good, in his judgment so requires." Act Cong. May 1, 1888 (25 Stat. 105–107, c. 209, §§ 1, 2, 5).

There is nothing in the record to show that the defendant proved, or offered to prove, that the plan and location of the bridge were approved by the secretary of war before its erection, or at any time, nor that the structure conformed to the requirements of· the act of congress; but, on the contrary, it was conceded that the openings on each side of the pivot pier of the draw span of the bridge were only 125 feet in the clear, and the act of congress required them to be 130 feet in the clear, unless otherwise expressly directed by the secretary of war, and no such direction was shown or claimed.

The court gave the following instruction, to the giving of which the defendant duly excepted: "Now, it is conceded that these piers were placed five. feet nearer to each·other than was authorized by the act of congress, and if you, as jurors and as men, applying your knowledge of such things to the testimony in this case, are satisfied that the narrowing of the space through which the driftwood should pass caused the driftwood to accumulate there, then you are authorized by your verdict to say that the defendant was responsible for that; and, if that is the natural result of narrowing it, the court will not invite any particular investigation upon your part to any theory that it did not cause that. If you are satisfied from the testimony that the natural result of it would be to cause the driftwood to accumulate, by narrowing the space, then you would be authorized by your verdict to say that the building of the bridge in that manner caused this impediment to the navigation." The court refused to give the following instruction asked by the defendant, to which refusal the defendant duly excepted: "If the distance between the piers had nothing to do with the accumulation of drift, and the said accumulation was unavoidable, and not the result of any negligence on defendant's part, you will find for the defendant, unless you further find that the plaintiff's boat was detained by reason of other defects in the bridge, or other negligence on the defendant's part." There was a trial to a jury, and·a verdict and judgment for the plaintiff, and the defendant sued out this writ of error.

Wm. T. Hudgins, for plaintiff in error.

O. D. Scott and Paul Jones, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The rules of law applicable to this case are well settled. Every citizen has a right to the free navigation of the public waters of the United States, and any interruption or obstruction of this free use by any kind of a structure is, prima facie, a nuisance. But the power of congress to regulate commerce among the states comprehends the control for that purpose, and to the extent necessary, of all the navigable waters of the United States, and the railroads engaged in interstate commerce. Interstate commerce by rail has

grown to be more extensive and important than that carried on upon the navigable rivers of the country. To promote and facilitate the commerce by rail, which has to cross navigable streams, it has become common for congress to authorize the construction of bridges over the navigable rivers of the United States. Congress has the power to determine the location, plan, and mode of construction of such bridges; and a bridge constructed over a navigable river in accordance with the requirements of the act of congress is a lawful structure, however much it may interfere with the public right of navigation. State v. Wheeling & B. Bridge Co., 18 How. 421; Silliman v. Bridge Co., 4 Blatchf. 74, Fed. Cas. No. 12,851; Id., 2 Wall. 403; Gilman v. Philadelphia, 3 Wall. 713; City of Georgetown v. Alexandria Canal Co., 12 Pet. 97; Missouri River Packet Co. v. Hannibal & St. J. R. Co., 2 Fed. 285; Hannibal & St. J. R. Co. v. Missouri River Packet Co., 125 U. S. 260, 8 Sup. Ct. 874; Rutz v. City of St. Louis, 7 Fed. 438; Pennsylvania Ry. Co. v. Baltimore & N. Y. Ry. Co., 37 Fed. 129; In re Clinton Bridge, 1 Woolw. 150, Fed. Cas. No. 2,900; Missouri River Packet Co. v. Hannibal & St. J. R. Co., 79 Mo. 478.

It is equally well settled by the authorities we have cited that those who seek to justify the erection or maintenance of a bridge across a navigable river, which obstructs its navigation, upon the ground that congress authorized its erection and maintenance, must show that it was constructed and is maintained in accordance with the requirements of the act of congress. The defendant does not seem to have offered any evidence to prove a compliance with any of the numerous requirements of the act of congress under authority of which it is claimed the bridge was built, and it was conceded on the trial that the bridge had not been constructed in accordance with the explicit requirements of the act of congress, in a material respect. The act requires that the openings on each side of the pivot pier shall not be less than 130 feet in the clear, unless otherwise expressly directed by the secretary of war; and it was not claimed that any such direction was given, and it was conceded that they were only 125 feet in the clear. The fifth section of the act declares that until the "plan and location of the bridge are approved by the secretary of war, the bridge shall not be built." There was not only no suggestion that the secretary of war had approved the narrowing of the openings on each side of the pivot pier, but it does not appear that he approved the location of the bridge, or the plans, or any plans whatever, relating to its construction. Indeed, for anything contained in the record before us, this bridge was constructed in entire violation of the law. However this may be, the bridge varies in its construction, in a material respect, from the requirements of the act of congress, and is therefore an unauthorized and unlawful structure. The variation is material and substantial and robs the structure of the protection of the statute. The act of congress is mandatory, that "the bridge shall not be built" until certain things have been done. The complaint avers that these things were not done, and there is no evi-

dence in the record tending to show that they were done, and in the absence of proof there is no presumption that they were done.  Upon the state of the record, therefore, the court would have been justified in telling the jury that the bridge was an illegal structure, and that the defendant was liable to the plaintiff for any damages resulting therefrom.  It did not do this, however, but told the jury that, if they found "that the narrowing of the space through which the driftwood should pass caused the driftwood to accumulate there, then you are authorized by your verdict to say that the defendant was responsible for that; and, if that is the natural result of narrowing it, the court will not invite any particular investigation upon your part to any theory that it did not cause that.  If you are satisfied from the testimony that the natural result of it would be to cause the driftwood to accumulate, by narrowing the space, then you would be authorized by your verdict to say that the building of the bridge in that manner caused this impediment to the navigation."  This instruction was more favorable to the defendant than it had any right to ask; for, upon the state of the record, the entire structure could only be regarded as a public nuisance.  Wood, Nuis. §§ 302, 596, 621; Pennsylvania Ry. Co. v. Baltimore & N. Y. Ry. Co., supra; Missouri River Packet Co. v. Hannibal & St. J. R. Co., 2 Fed. 285; Id., 79 Mo. 478.  And, viewed in that light, the only question was whether the bridge, taken as a whole, was the proximate cause of stopping and delaying the plaintiff's boat.  The defendant did not contend that the bridge was not an obstruction to the navigation of the river, but only that congress had authorized the obstruction.  This would have been a complete defense, if proved; but it was not proved, and no evidence was offered tending to prove it.

On the subject of damages, the court told the jury that, if they found the defendant responsible for the detention of the boat, the plaintiff would be entitled to recover his actual damages.  "It is not a case of speculative damages, but a case of actual damages, as shown by the testimony."  Exception was taken to this part of the charge.  The charge is not erroneous for anything in it, and, if the defendant desired a more particular statement of the rule of damages, it should have asked an instruction upon the subject.  Williams v. Simons, 16 C. C. A. 628, 70 Fed. 40.

It may be well to say that, though this bridge may have been built in entire disregard of the act of congress, it is competent for congress to declare that it shall not be deemed an obstruction to navigation, and to legalize the structure.  State v. Wheeling & B. Bridge Co., 18 How. 421.  The judgment of the district court is affirmed.

SANBORN, Circuit Judge (concurring).  I concur in the result in this case on the ground that there is no evidence in this case that the plan or location of this bridge was ever approved by the secretary of war, and the act of congress prohibited its construction until it was so approved.  Upon this record, the entire structure appears to be an unauthorized obstruction to the free navigation of the river.