FRED NASON et al., Respondents, v. JONATHAN B. WEST, Appellant.

(County Court, Monroe County, May, 1900.)

1. Negligence — Runaway caused by steam motor — Fright not actionable.

A runaway, caused by a horse taking fright at a steam motor carriage, with pneumatic tires, slowly approaching him and not differing in construction from ordinary motor carriages except that it had a

smokestack which only emitted the usual amount of vapor, affords no cause of action to the owner of the horse for damages caused by the accident.

Mere fright, deteriorating the value of the horse, gives no cause of action to its owner.

2. **Same — Construction of statute requiring a person to be sent one-eighth of a mile ahead of a steam vehicle.**

The statutory provision, forbidding the use in public streets (except on railroad tracks) of any vehicle propelled by steam unless a person is sent at least one-eighth of a mile in advance to warn travelers, was directed against traction engines and not against automobiles, which have come in use since the passage of the statute.

The said provision cannot be successfully invoked to procure a recovery upon the ground that the owner of the motor carriage was proceeding illegally where the proof shows that a compliance with the statute would not have prevented the accident.

APPEAL from a judgment of the Municipal Court of Rochester, in favor of plaintiffs, for forty-two dollars and ninety-five cents damages and ten dollars and ninety-five cents costs, for injuries to plaintiffs' horse and wagon, resulting from a runaway, caused by the horse taking fright at defendant's horseless carriage.

John B. M. Stephens, for appellant.

George D. Rud, for respondents.

SUTHERLAND, J. Plaintiffs' horse and delivery wagon were standing on Tracy Park, Rochester, October 18, 1898, the horse being hitched by a strap attached to a thirty-pound weight. The roadway of Tracy Park is fifteen feet from curb to curb. Defendant entered Tracy Park, at Alexander street, with his motor carriage, and as he approached, plaintiffs' horse, who was headed towards Alexander street, became frightened at defendant's outfit and ran away, damaging the wagon and harness to the amount of seventeen dollars and forty-five cents. The horse received no injury, except such as comes from fright. The Municipal Court, in addition to the seventeen dollars and forty-five cents, allowed twenty-five dollars damages for deterioration in value of the horse,

supposed to follow from the increased propensity to take fright induced by its experience on this occasion.

In Mitchell v. Rochester R. Co., 151 N. Y. 107, it was held that mere fright, caused by negligence, does not give to the person frightened any cause of action, no matter how serious the fright may be in its after effects. It is argued with much force that, for the same reasons of public policy which were controlling in the Mitchell case, the item of twenty-five dollars damage to this horse for fright should have been disallowed. Furthermore, it seems this horse had run away twice before and it would require a very nice insight to determine, without speculation or mere guesswork, what effect this scare had upon its permanent psychic equipment.

But passing that, a more important question is presented, whether any recovery should be had. This motor carriage was made by defendant, and, as described by the witnesses and shown in the photograph exhibits, while somewhat crude, it does not differ very materially in general appearance from the steam automobiles which are coming into common use. It runs on four wheels, with pneumatic tires; has a canopy top and is about the size of a one-horse delivery-wagon. The motive power is steam, generated by a gasoline burner. A smokestack, connecting with the combustion chamber, extends to the top of the canopy in the rear. There are sinuations in the stack through which the escaping vapor and the exhaust steam pass, and the design is that the exhaust steam shall be condensed inside the stack. This stack would seem to be the main point of dissimilarity in appearance between defendant's machine and other motor carriages operated by steam.

The horse has no paramount or exclusive right to the road, and the mere fact that a horse takes fright at some vehicle run by new and improved methods and smashes things, does not give the injured party a cause of action. As Judge Cooley says, in Macomber v. Nichols, 34 Mich. 212: "When the highway is not restricted in its dedication to some particular mode of use, it is open to all suitable methods; and it cannot be assumed that these will be the same from age to age, or that new means of making the way useful must be excluded merely because their introduction may tend to the inconvenience or even to the injury of those who continue to use the road after the same manner as formerly." If the defendant's motor carriage is practicable for the purpose of

travel, and the noise and vapor caused by its use are kept within reasonable limitations and are no greater than are fairly incident to the use of motor carriages which are found adapted to the needs of the general public, then I cannot see how the defendant can be held liable, in the absence of evidence that, at the particular time complained of, the carriage was operated carelessly.

If one should find it desirable to go back to primitive methods and trek along a city street with a four-ox team and wagon of the prairie-schooner variety, it would possibly cause some uneasiness in horses unused to such sights. Yet, it could not be actionable, in my opinion, if a runaway should result, provided due care were shown not unnecessarily to interfere with the use of the highway. Horses may take fright at conveyances that have become obsolete as well as at those which are novel; but this is one of the dangers incident to the driving of horses, and the fact cannot be interposed as a barrier to retrogression or progress in the method of locomotion. Bicycles used to frighten horses, but no right of action accrued. Holland v. Bartch, 120 Ind. 46; Thompson v. Dodge, 58 Minn. 555. Electric street cars have caused many runaways. Automobiles operated without steam, by storage batteries or by gasoline explosion engines running at a moderate speed, may cause fright to horses unused to them, yet the horses must get used to them or the driver take his chances.

The evidence in this case shows that defendant was running his motor at a moderate rate of speed and as it approached the horse he slowed up. Defendant and his wife, who was with him, say they came to a full stop before the horse started to run, but this is contradicted by plaintiffs' witnesses, who admit he slackened speed.

It will not do to say that it is proper to run any kind of a contrivance upon the street, in which persons may be carried. A machine that would go puffing and snorting through the streets, trailing clouds of steam and smoke, might be a nuisance, but this is not such a case. It cannot be said that the defendant's machine is such a departure in its construction or mode of operation from other steam motor carriages which experience has lately shown to be entirely practicable for street use, as to make it a nuisance, although because of the present novelty of horseless carriages, horses may take fright at its approach. There was no proof of an unusual amount of vapor escaping at the time of the accident, nor of any amount of noise greater than is ordinarily heard in running a ma-

chine of that character, and to sustain this judgment is to condemn the defendant's motor carriage and all others operating in a similar way, and to declare them impracticable and unfit for use upon the streets.

There is a statute against the use of any vehicle propelled by steam, in public streets (except on railroad tracks) unless a person is sent at least one-eighth of a mile in advance to warn travellers of its approach. Highway Law, § 155; Penal Code, § 640, subd. 11. This statute, though broad enough to cover the motor in question, was passed before automobiles were in use, and it was directed against traction engines, which are ponderous and noisy affairs, and have been the cause of much litigation. Mullen v. Village of Glens Falls, 11 App. Div. 275. The provision of the law that the forerunner must procede the steam carriage by at least an eighth of a mile, shows that it was not drawn with steam automobiles in mind, of the kind used in this case; and if a man had been sent that distance ahead, it would have been of no value to plaintiffs as a warning, for their driver would not have met him, so it cannot be said the accident occurred because of defendant's failure to comply with the law referred to.

The temporary inconvenience and dangers incident to the introduction of these modern and practical modes of travel upon the highway must be subordinate to the larger and permanent benefits to the general public, resulting from the adoption of the improvements which science and inventive skill have perfected.

The judgment appealed from is reversed.

Judgment reversed.