NEW YORK, N. H. & H. R. CO. v. PISCATAQUA NAV. CO. et al.

(Circuit Court of Appeals, First Circuit. March 27, 1901.)

No. 363.

1. NAVIGABLE WATERS—OBSTRUCTION OF CHANNEL BY FALLEN DRAWBRIDGE—RIGHT OF ACTION FOR PRIVATE INJURY.

Where the owner of a bridge over a navigable channel negligently permitted the draw of the bridge to improperly obstruct the channel, the owner of sea-going vessels which, before the creation of the obstruction, had sailed with cargoes for points of discharge in the channel above the bridge, and of vessels which were above the bridge when the obstruction was created, may, if the vessels were prevented by the obstruction from passing up and down the channel when necessary to do so, maintain suits in admiralty to recover damages in the way of demurrage, regardless of the local law.

2. SAME—INJURY TO SUSTAIN ACTION—REMOTENESS OF DAMAGES.

A tug engaged in towing vessels to and from a channel to which they resort, which channel is negligently and improperly obstructed temporarily by the draw of a bridge, but which tug was accustomed to deliver and receive its tows below the bridge and had no occasion to pass it, suffers no actionable injury by reason of the obstruction merely because it loses the towage of vessels which, except for the obstruction, would have used the channel obstructed.

Appeal from the District Court of the United States for the District of Massachusetts.

See 89 Fed. 362.

Josiah H. Benton, Jr., and Charles F. Choate, Jr., for appellant.
William M. Richardson, for appellees.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. This is a proceeding in admiralty, arising out of claims in behalf of sundry vessels on account of an obstruction of a navigable channel by the falling of a draw in a bridge of the New York, New Haven & Hartford Railroad Company. The channel is the only communication between South Bay, so called, in Boston, and the harbor; and its obstruction prevents ingress and egress to and from South Bay, and, if unlawful, would undoubtedly constitute a public nuisance. The bridge and its draw were lawfully erected and maintained across the channel, and therefore they could not become a public nuisance, except through want of reasonable care in reference thereto. No question, however, is made by the parties on this particular point.

The damages claimed are in the way of demurrage for the detention of the various seagoing vessels to which the libel relates. These fall into three classes: First, vessels which had passed the drawbridge loaded, discharged their cargoes, and were ready to proceed to sea when the draw was permitted to obstruct the channel, and were prevented from so doing by the obstruction; second, loaded vessels, obstructed in proceeding up the channel to discharge at the proper places in South Bay to which they were consigned, and which had sailed on their voyages before information was received that the obstruction existed; third, a tug owned by the Piscataqua Navigation Company, one of the libelants.

The decree of the court below included damages in behalf of the three several classes named. No specific assignment of error was made relating to this classification, or on account of the tug; but, before the commissioner of the court below, objections were taken to an allowance in behalf of the tug, and this was followed by proper exceptions, and the question as to her has been discussed at bar. In any event, we cannot ratify by our silence an allowance of damages in her behalf. The libelants state that she was used solely for towing cargo-carrying vessels to the bridge, and that, by reason of the fall of the draw, they were unable to use her, and so lost the value of her services for several days. The proofs show that she was engaged entirely below the bridge, and that there was no occasion for her to pass it, so that she was not, in truth, obstructed by it; and she merely lost her services in towing vessels which did not go up the channel, but which would have gone up except for the obstruction.

If we were bound by the decisions of the local courts (that is, of the supreme judicial court of Massachusetts), probably we would be compelled to reverse the decree of the district court; but Workman

v. City of New York, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314, directly holds that in a proceeding of this character we are governed by a uniform admiralty rule.

The general principle is sufficiently stated in Pol. Torts (5th Eng. Ed.) 376, as follows:

"A private action can be maintained in respect of a public nuisance by a person who suffers thereby some particular loss or damage beyond what is suffered by him in common with all other persons affected by the nuisance."

The difficulty arises in determining what constitutes a "particular loss or damage," within the meaning of the rule. In view of the conflicting authorities, it is useless for us to consider anything except what comes from the federal courts. Having regard to our disposition, which we have several times expressed, to follow the deci-- sions of the circuit courts of appeals in other circuits, except in cases where they have clearly overlooked well-settled principles of law, we might well feel bound by that of the circuit court of appeals for the Eighth circuit in Railway Co. v. Parsons, 20 C. C. A. 481, 74 Fed. 408, and therefore holden to affirm the decree of the court below, except so far as it relates to the tug. In that case it appears that a suit at common law was brought to recover damages for an alleged unlawful detention, by means of a bridge across a public navigable river of the United States, of a steamboat and two barges with which the plaintiff below was navigating the stream. The circumstances were such that the bridge was held to be an illegal structure and a public nuisance. The action, like the libel at bar, was brought only for damages by way of demurrage. The judgment below was for the plaintiff below, and it was affirmed on appeal. It is true that the particular question whether the owner of the vessels was entitled to maintain such an action was not discussed; but the court seems to have assumed that there is no doubt on this point, and (page 485, 20 C. C. A., and page 412, 74 Fed.) it said unhesitatingly that the defendant was liable to the plaintiff for damages. We, however, think ourselves concluded by the decisions of the supreme court. The leading case is that of Pennsylvania v. Wheeling & Belmont Bridge Co., which appears in the Reports at four different places. Our reference is especially to 13 How. 518, 557, 559–562, 564, 578, 14 L. Ed. 249. The case is so well known that we need not describe it at any length. It is sufficient to say that it was a proceeding in equity, and related to a bridge which was a public nuisance, and that the bill was sustained. It was held that the state was not suing in its sovereign capacity, but by virtue of its proprietorship of certain canals, which gave it a revenue interest in the navigation of the public river which the bridge obstructed. The precise point of the case in this particular was stated in Louisiana v. Texas, 176 U. S. 1, 19, 20 Sup. Ct. 251, 257, 44 L. Ed. 347, 354, as follows: "In Pennsylvania v. Wheeling & Belmont Bridge Co., 13 How. 519, 14 L. Ed. 249, the court treated the suit as brought to protect the property of the state of Pennsylvania."

The case was next reported in 18 How. 421, 15 L. Ed. 435. The court, at page 431, 18 How., and page 437, 15 L. Ed., refers to the right of private parties to a remedy against public nuisances; and

it puts the remedy at common law for demurrage, and that in equity for an abatement of the nuisance, on parallel lines. In Irwin v. Dixion. 9 How. 10, 13 L. Ed. 25, the real issue related to jurisdiction in equity with reference to nuisances, and no conclusion was reached which aids the case at bar. Railroad Co. v. Ward, 2 Black, 485, 17 L. Ed. 311, is in some respects an authority. There a bill brought by the owners of some steamboats, charging that a bridge over a navigable stream was a common nuisance, and asking relief against it, was dismissed on general grounds touching proceedings in equity as to nuisances. The court divided, three judges being in favor of sustaining the bill. The case is stated at pages 491, 492, 2 Black, and page 314, 17 L. Ed.; and, apparently, so far as the parties were concerned, the whole court thought the bill might be sustained. Otherwise, the question on which the bill was dismissed might never have been discussed. The question whether or not proper parties were made came directly in issue, so that the case might be said to be throughout in favor of individual relief in equity against public nuisances on navigable rivers, even where they merely cause detention. Its effect, however, may not be entirely clear, in view of the expression on page 492, 2 Black, and page 314, 17 L. Ed., that an individual seeking to enjoin a public nuisance sues rather as a public prosecutor than on his own account. While this observation was directly in issue in the case, because Ward sued without joining his co-owners in the same steamboats, yet its effect must be regarded as met by what is stated in Gilman v. Philadelphia, next referred to.

Gilman v. Philadelphia, 3 Wall. 713, 18 L. Ed. 96, was a suit brought by individuals on account of a bridge over the Schuylkill river, claimed to be a public nuisance. The bill was dismissed on the ground that the bridge was not a nuisance, but no question was made as to parties. It was brought by the owners of wharf and dock property from which access was cut off by the bridge; but the case becomes of use in view of what the opinion says, at page 722, 3 Wall., and page 98, 18 L. Ed., about Pennsylvania v. Wheeling & Belmont Bridge Co. In observing on the claim that the complainant was not specially interested in navigation, and could not interfere for its protection, it puts the owner of a wharf and the owner of vessels affected by a bridge which is a public nuisance on the same footing. Also, it lays down a general rule that, where a public nuisance is productive of a specific injury to an individual, he may make it the foundation of an action at common law, as well as, under proper circumstances, of a proceeding in equity. Of course, in making this observation, Mr. Justice Swayne, who delivered the opinion, had regard to the peculiar circumstances existing in each of the cases considered, so he must be regarded as having held that, under their respective circumstances, the owner of steamboats in the one, and the owner of the wharf in the other, could maintain an action at common law. Hamilton v. Railroad Co., 119 U. S. 280, 7 Sup. Ct. 206, 30 L. Ed. 393, is not in point, because there it was held merely that the plaintiff could not recover for a temporary inconvenience arising from the exercise of an authority given by statute. Any further expressions, therefore, found therein are dicta.

We find no other decisions of the supreme court pertinent to the precise question before us. The result of those we have cited is that the libelants in this case would have had an undoubted remedy in equity, so far as concerns seagoing vessels which had occasion to pass the draw in question with cargoes consigned to South Bay, or with reference to the same vessels returning to sea after discharging. So far, the cases cited are directly in point. The only question which the supreme court has not directly ruled on is whether or not, in addition to relief in equity, vessels situated like these in question have a remedy at common law for damages in the way of demurrage on account of mere detention. We have seen that in at least two instances the opinions read in behalf of that court approve such a remedy equally with that in equity. Moreover, it having been thus established that an individual has, under these circumstances, a cause of action even in equity, it would seem to follow that the supreme court has also indirectly established that, so far as concerns all the vessels involved in this appeal, except the tug, the owners are within the class entitled to relief; otherwise, they could have no remedy even by a bill in equity. It being established that they are of that class, the nature of the action follows, of course, the nature of the injury and of the relief necessary. We can conceive of no sound principle which, under the circumstances, would give a right to an individual to proceed by a bill in equity, and exclude a right to proceed by a suit at common law for damages. We must also remember that admiralty is not restricted to the narrow rules of the common law, and that it acts on the broad principles of equity. This is so trite that we hardly need cite authorities in its support; but we have expressly applied it in The Iris, 40 C. C. A. 301, 100 Fed. 104, 109, and it was stated generally in O'Brien v. Miller, 168 U. S. 287, 297, 18 Sup. Ct. 140, 42 L. Ed. 469. Therefore, even if there were no remedy at the common law, the district court, sitting in admiralty, was justified in proceeding on the large principles of the chancery courts.

The tug, however, suffered no direct injury by the fall of draw. The only question in which she is concerned is whether, in consequence of the obstruction of the channel, she probably had a diminished employment in towing vessels. The impossibility of estimating the damages which arise from contingencies of this character, and of computing the contingencies themselves, is such that there are no rules which enable courts to give relief under such circumstances. Therefore the decree of the court below must be modified to the extent of remitting all damages allowed on her account.

Under the circumstances, and on well-settled rules of practice, neither party has prevailed on appeal to such an extent as to justify awarding costs in this court in its behalf.

The decree of the district court is reversed, and the case is remanded to that court, with instructions to enter a decree in favor of the libelants for the damages found by it with reference to all the vessels involved, except the tug Piscataqua, with interest to the time of the final decree, and for the costs of the district court, and to deny all damages so far as the tug is concerned; and neither party will recover any costs of appeal.