### KIRWIN v. MEXICAN PETROLEUM CO.

(District Court, D. Rhode Island. July 24, 1920.)

No. 1382.

1. **Navigable waters** ⬤⟾39 (2)—**Owner of bathing beach may maintain action for pollution of water.**

 The owner of land on the shore of public waters, having a sandy beach, and upon which he maintains facilities for public bathing, from which he derives a profit, *held* to suffer special injury from pollution of the water, which destroys the value of his land for such purpose, which will support an action for damages.

2. **Nuisance** ⬤⟾76—**Declaration for public nuisance need not allege negligence.**

 An allegation in a declaration that defendant in the conduct of its business has created a continuing public nuisance by which plaintiff has suffered special damage cannot be met by showing that it was necessarily incident to the business itself, or that it was unavoidable by the most careful management, and the declaration need not allege negligence.

At Law. Action by John W. Kirwin against the Mexican Petroleum Company. On demurrers to declaration. Demurrers overruled.

William R. Champlin, of Providence, R. I., for plaintiff.

Green, Hinckley & Allen, of Providence, R. I., for defendant.

BROWN, District Judge. This is an action of trespass on the case for damages resulting from the pollution of public waters and shores by oil deposits. The plaintiff, on land in the city of Cranston, bounded upon Providence river or Narragansett Bay, carries on the business of letting bath houses and bathing suits, and maintaining a bathing pavilion where a variety of articles is sold to the public.

The plaintiff's shore resort is known to the public as "Kirwin's Beach."

[1] It is alleged that the defendant corporation is engaged in the business of transporting, receiving, selling, storing, handling, distributing, manufacturing, and refining crude oil and other grades of petro-

---

⬤⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

leum oil, on premises in Providence, on the west bank of the Providence river, and in East Providence, on the east bank of the Providence river, maintaining tanks, pipes, and other apparatus, and operating tank steamers, vessels, and barges, etc., in the usual course of its business; that on January 1, 1916, and on other days, the defendant did discharge and suffer to escape from its plants, steamers, barges, etc., into the waters of the Providence river, large quantities of oil and kindred products, which were carried by the winds, currents and tides of the Providence river upon plaintiff's beach, fouling and polluting the beach and waters, and rendering the same wholly unfit for bathing, whereby the value of plaintiff's property and business is destroyed.

The principal question raised by demurrer, and which goes to all counts of the declaration, is thus stated by the defendant:

"Has the plaintiff alleged such special damage as will allow him to recover in this action, or is the damage sustained by him such as is common to the public, for which a private action will not lie?"

It is contended—

(1) That plaintiff's damage does not differ in kind from that sustained by other members of the public similarly situated.

(2) That the damages are too remote.

I am of the opinion that neither of these objections is sound.

Lands located on the shores of the Providence river and Narragansett Bay have a special value, owing to the riparian rights of access to the waters. This right of access is a private right, incidental to ownership of the upland. The general public does not have the right to cross or occupy private lands to gain access to the shores below the high-water mark, at which private ownership terminates.

The value of the right to erect buildings in aid of navigation and fisheries or for bathing in the public waters varies greatly according to the character of the shore. The right of direct access at a particular place to deep water close to the upland has its special value for docks and wharves.

The right of direct access to shallow water and sandy beaches for bathing purposes has also its special value. The rights to occupy bathing houses built on private lands, and to pass over private lands to public waters for bathing purposes, are private rights of the owner, which he may himself exercise, and which he may grant to others. These rights are entirely distinct from the rights of the public below high-water mark. While the owner cannot grant rights to bathe in public waters, he may grant rights of access thereto, and a use of his lands which may be regarded as a valuable use of a private right in aid of the exercise of a public right.

Pollution of water, which renders it unfit for bathing, destroys, not only the rights of the public below high-water mark, but the value of private rights of access to public waters and of buildings erected for use in aid of the exercise of such rights.

The plaintiff in the present case does not claim damages for the destruction of his right as a member of the public to bathe in public waters, nor for any injury which is common to himself and all other

members of the public. It is not alleged that the public bathes upon the plaintiff's premises, but that they obtain from him rights in his land and facilities for bathing, and that by the creation of a public nuisance the value of what the plaintiff had in his own right, and what the public were in the habit of paying for, has been diminished or destroyed.

That this is a natural consequence of the alleged pollution of water by the discharge of oil seems clear. Having in mind the large number of shore cottages at the waters of this state, and the great depreciation of values of the investments in real estate adjoining the shores, which may naturally result from such pollution of the waters by oil as destroys bathing on the shores, I am unable to believe that this should be regarded as damnum absque injuria. It cannot be doubted that the location of land on the water's edge and adjoining a sandy beach gives it a special value, which dealers in real estate and purchasers alike would recognize. The impairment of this special value is in no proper sense a violation of a public right, though it may be a direct consequence of a violation of public rights.

The damage which has been done does not cease at the water's edge; it affects the use of the upland for a purpose for which it is specially valuable.

The value to plaintiff's customers of the privilege of passing over plaintiff's land to clean water suitable for bathing is destroyed when the water or the adjacent public soil under water is made unsuitable for bathing, by the creation of a public nuisance. To unlawfully turn away customers from an established place of business is a well-settled ground of liability for damages. It is immaterial that the right of each customer to bathe in public waters may be violated. The plaintiff does not sue for a violation of their rights below high-water mark, but for the destruction of the value of his rights above high-water mark.

The question of the right of private action for special damages resulting from a violation of a public right was before me many years ago in Piscataqua Navigation Co. et al. v. N. Y., N. H. & H. R. Co. (D. C.) 89 Fed. 363 (see on appeal 108 Fed. 92, 47 C. C. A. 225). This case has been commented upon by Judge Jeremiah Smith in an exhaustive discussion of the subject in volume 15, Nos. 1, 2, Columbia Law Review, January and February, 1915, and seems to state the rule which is best supported by the authorities and which accords with the views of the Supreme Court of Rhode Island, as stated in Payne & Butler v. Providence Gas Co., 31 R. I. 295, 77 Atl. 145, Ann. Cas. 1912B, 65. Although the defendant, by the creation of a public nuisance may have violated the theoretical right of every citizen, and though it may have inflicted upon several others substantial damages and actual loss similar to that alleged by the plaintiff, this is a defense without merit.

[2] A second ground of demurrer goes only to the first and second counts of the declaration. The defendant states that no negligence upon the part of the defendant is set forth in either of these counts, and contends that negligence must be alleged and proved to warrant a recovery. This does not apply to the other counts, which allege negligence.

It may be conceded that as the defendant is engaged in a lawful business its liability for the escape of oil is not to be determined by the strict rule applicable to one who fails to prevent the escape of a dog "well knowing that the said dog was used and accustomed to attack and bite mankind." 2 Chitty on Pleading, 596, 597; Jennings v. Davis, 187 Fed. 703, 708, 109 C. C. A. 451; Bigelow's Leading Cases on Torts, p. 478 et seq. Assuming that the defendant's duty to prevent the escape of oil is not absolute, and that an isolated and inevitable accident, or act of God, might excuse it from liability, it does not follow that it is not liable for a nuisance created without negligence in the care of its appliances, or in the mode of conducting its business; nor that the plaintiff must allege and prove that the creation of the public nuisance was due to special causes, preventable by the exercise of due precaution in the care of its property and the operation of its appliances. A nuisance may be created by the conduct of a business with all the care and caution which is possible, and with appliances in perfect order and most carefully operated. The existence of a nuisance may be due to the nature of the business, and its unavoidable effects on others, as well as to negligence in the maintenance of the plant or the conduct of its operations.

Should it appear that the defendant had been guilty of no negligence in respect to the condition or operation of its appliances, and that the plaintiff could not prove the allegations of its other counts which specify negligence, this would not relieve the defendant from liability upon the facts alleged in the first and second counts.

The allegation that the defendant, in the conduct of its business, had created a continuing public nuisance of the kind described, by which plaintiff suffered special damage, cannot be met by showing that it was necessarily incident to the business itself, or that it was unavoidable by the most careful management; nor can it be met by showing that it was avoidable by due care on the part of the defendant. If it was due to inevitable accident, that is matter of defense, which need not be negatived in the declaration.

It is the general rule that negligence is not an element in an action for a nuisance, and need not be alleged. "Actions for nuisance, properly speaking, stand irrespective of negligence." Bigelow's Leading Cases on Torts, p. 473; 14 Enc. of Pl. & Prac. 1114. See, also, Blomen v. N. Barstow Co., 35 R. I. 198, 85 Atl. 924, 44 L. R. A. (N. S.) 236.

It is further objected that in counts other than the first and second the defendant's negligence has not been set forth with sufficient particularity. The details of the construction and condition of the defendant's plant and the mode of operation are within the defendant's knowledge, and the allegations seem sufficient to enable the defendant to prepare its defense.

Demurrers overruled.