[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This case is before the Court for adjudication on the merits. By request of the parties, this Court bases its decision entirely upon the Memoranda of Law and evidence submitted by the parties. Industrial Park Water Company, Inc. (Industrial) alleges that CNA Insurance Company[1]
(CNA) wrongfully failed to pay its claim under a commercial general liability and property damage insurance contract, thus willfully breaching its obligations under said contract. CNA counters that it was justified in denying the claim because Industrial failed to meet its obligations under the policy. Decision is herein rendered in accordance with Super. Ct. R. Civ. P. Rule 52.
 Facts and Travel
The facts of this case are essentially undisputed. Accordingly, after review of all the evidence and consideration of the arguments presented in the trial memoranda, this Court makes the following factual findings. Industrial is a Rhode Island Corporation, organized and operated by legislative charter, to supply water to an industrial park in Slatersville, Rhode Island. CNA is a foreign insurer, authorized to do business in the State of Rhode Island. In 1996, Industrial purchased a Commercial General Liability and Property Damage insurance policy from CNA. Industrial was fully paid on its premiums, and the policy was in effect during all relevant times.
On April 1, 1997, one of Industrial's water mains ruptured causing approximately one million gallons of water to escape. The cause of the rupture was never determined; however, the only hypothesis submitted to the Court is that an electrical wire, knocked down by heavy snowfall, burned through the asphalt road under which the pipe lay and burst the pipe. The resulting flood not only damaged the road but also washed sand into a nearby wetland protected by the DEM.
Industrial responded to the accident by hiring contractors to uncover and repair the pipe and then refill the excavation site. It also retained an engineering firm to develop a plan to remediate the wetlands damaged by the flood and to seek bids to complete the work per order of the DEM. In addition to the vendors that Industrial hired and paid to address the accident, the Town of North Smithfield hired a contractor to repair the road. In a letter, the town informed Industrial that it was holding Industrial responsible for the damage, and subsequently, Industrial paid the contractor. Lastly, the North Smithfield Fire Department provided emergency pumping, for which Industrial was billed. Industrial estimates the total cost of the incident to be approximately $40,820.15.[2]
Industrial notified CNA of the incident on or around April 4, 1997. It did not obtain prior approval from CNA before it made arrangements with the contractors or paid any bills relating to the incident. After CNA conducted an investigation, it denied Industrial's claim for reimbursement for out-of-pocket expenses. Its decision was based on its belief that (1) the incident was caused by an "Act of God" and so was not covered by the policy; (2) Industrial was never legally obligated to pay for the loss; and (3) Industrial violated the voluntary payment provision of the policy when it paid for road resurfacing and the environmental remediation plans.
 Standard of Review
The rules of civil procedure provide that "in all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon." Super. Ct. R. Civ. P. Rule 52. Pursuant to this authority, "[t]he trial justice sits as a trier of fact as well as of law." Hood v. Hawkins,478 A.2d 181, 184 (R.I. 1984). "Consequently, he [or she] weighs and considers the evidence, passes upon the credibility of the witnesses, and draws proper inferences." Id. Brief findings and conclusions are sufficient as long as they address and resolve pertinent controlling factual and legal issues. White v. LeClerc, 468 A.2d 289, 290 (R.I. 1983). An extensive analysis and discussion is not a measure of compliance with Rule 52. Id.
Because the sole issue to be decided by this Court is whether the damages incident to the pipe rupture in April of 1997 are covered by Industrial's insurance policy with CNA, a careful review of the contract provisions and Rhode Island contract law are necessary. Employers Mut.Cas. Co. v. Pires, 723 A.2d 295, 298 (R.I. 1999) (as a general proposition, the court applies the same rules when construing insurance policies as it does when construing contracts). The right of an insured to recover under a liability policy is determined by the terms of the contract. Lee R. Russ, Couch on Insurance § 126:1 (3d ed. 1997) (hereinafter Couch on Insurance). "Accordingly, no recovery may be had for a claim that clearly falls outside the coverage provisions of a liability policy or for a claim that clearly falls within a policy exclusion." Id. The initial burden is on the insured to make a prima facie case that the claim is within the provisions of the policy. GeneralAccident Ins. Co. of America v. American Nat'l Fireproofing, 716 A.2d 751,757 (R.I. 1998). After a prima facie case is established, the insurer has the burden of proving the applicability of policy exclusions and limitations or other legal doctrines in order to avoid or reduce an adverse judgment. Id.
 The Insurance Contract: Commercial Property Coverage
The policy in question includes commercial property coverage and commercial general liability coverage. The commercial property form provides that "we [CNA] will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause or loss." Specifically excluded from the general commercial property coverage are roadways; paved surfaces; the costs of excavation, grading, backfilling or filling; and underground pipes. The policy specifically includes coverage for fire department service charges for "when the fire department is called to save or protect Covered Property from a Covered Cause of Loss. . . ." However, this provision is limited by its contractually defined terms. To wit, "Covered Property" refers only to property for which there is a limit of insurance shown in the declarations.
This Court is not persuaded that Industrial's first party claims, for emergency pumping by the North Smithfield Fire Department and road and pipe repair by A.E. Bragger Construction Company, are covered under its commercial property insurance policy. First, Industrial concedes that its pipes are not covered under the policy, but contends that because its water constitutes its "stock," its first party claims should be paid under the supplemental fire coverage referred to above. Even accepting, arguendo, that water is Industrial's "stock," Industrial cannot recover under the property policy because no limit of insurance for business personal property appears in the declaration. Because only "buildings" are listed in the declaration, the policy does not include business personal property such as stock.
Secondly, even if the policy included business personal property such as stock, the policy provides for coverage only where the fire department is called to save or protect the covered property. This Court is bound not to depart from the literal language of the policy absent a finding that the policy is ambiguous. Pires, 723 A.2d at 298. The plain meaning of "save and protect" does not contemplate or encompass the emergency pumping services that the North Smithfield Fire Department rendered.
Furthermore, there is an explicit geographic limitation included in the policy. The limitation is found under the section of the policy entitled, "Coverage," and states that CNA will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause or loss." (Emphasis added). Additionally, coverage for Business Personal Property, if applicable, is limited to that which is within 100 feet of the described premises. "Where the policy designates a particular piece of property, coverage is not generally extended to offpremise risks . . . even where the insured owns, or otherwise bears responsibility for, such other property." Couch on Insurance § 126:9. In this case, the policy lists three specific buildings at a specific address owned by Industrial. Industrial has not shown that its "stock" was within 100 feet of its treatment plant or distribution towers. CNA is not obligated to insure incidents that occur beyond the geographic limitations set out in the policy. Consequently, CNA was justified in denying Industrial's claims.
Lastly, Industrial does not actually make a claim for the loss of the water itself. CNA already reimbursed Industrial for the cost of supplying an alternate water source to the businesses in the industrial park. The payment was not made vis a vis the insurance policy but as an "accommodation payment" based on the longstanding relationship between the parties. Because the only conceivable claim under the commercial property provision is for the loss of Industrial's "stock," in this case the cost of providing an alternate source of water for its customers, and because of the reasons stated above, this Court finds that Industrial is not entitled to payment by CNA under the its commercial property insurance policy.
 The Insurance Policy: Commercial General Liability Coverage (CGL)
In addition to commercial property insurance, Industrial also held a CGL policy. CGL policies are designed to protect the insured from losses arising out of business operations. Couch on Insurance § 129:1. The relevant provisions of Industrial's policy state:
 "We (CNA) will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies. We will have the right and duty to defend any `suit' seeking those damages."
 This insurance applies to `bodily injury' and `property damage' only if: (1) the `bodily injury' or `property damage' is caused by an occurrence that takes place in the `coverage territory'; and (2) the `bodily injury' or `property damage' occurs during the policy period."
In sum, the policy covers liabilities that the insured incurs to a third-party subject to two limitations: explicit exclusions and limitations imposed by the contractual definition of terms. See Robert H. Jerry, II, Understanding Insurance Law § 65(a) (2d ed. 1996) ("The phrase `to which this insurance applies' recognizes that there are specified perils covered by the CGL as well as specific exclusions to the affirmative grants of coverage.") Because the CGL is a type of "all risk" policy, the initial burden is on the insured to prove that the loss occurred, then the burden shifts to the insurer to show that the loss was caused by an exception. Id.
Many of the common terms found in a CGL policy have been litigated and defined in the courts. As mentioned above, some of the terms have specific meanings and are defined by the policy itself. The primary disagreement in this case concerns the meaning of "legally obligated to pay as damages," which is not specifically defined. Industrial argues that it was legally obligated to clean up the mess caused by the rupture and so should be reimbursed for its expenses therefrom. When the pipe ruptured, water and sand poured into a neighboring wetland in violation of § 2-1-21 et. seq. of the Freshwater Wetlands Act, which prohibits the filling in or alteration of wetlands. The statute also requires compliance with any DEM order or in the alternative establishes liability for the cost of the restoration if the DEM performs the restoration. §2-1-23. The DEM conducted an investigation and sent a letter to Industrial, stating that it considered Industrial to be responsible for remediating the wetland. The letter stated that no further enforcement actions would be pursued provided that Industrial remove the fill. To date, no remediation has been undertaken by Industrial, and the DEM has not taken further action. Although the DEM has yet to pursue any administrative or legal action, Industrial believes that it has a legal obligation to pay for the clean up and that its claims related to the clean up fall within the provisions of the CGL policy.
Industrial's legal obligation to North Smithfield, according to the Plaintiffs, would be based on common law nuisance. It claims that the damage to the road created an actionable nuisance for which it was responsible, regardless of negligence. There is no record before this Court of any third party actually pursuing such a claim against Industrial.
CNA, on the other hand, asserts that Industrial was not legally obligated to pay anything, and so its claims were properly denied. CNA, in its communications with Industrial, consistently based its denials on the fact that the accident was an Act of God and that because Industrial did not negligently cause the accident, it was not covered under the policy. CNA focuses its argument on the section of the policy that states that "we will have the right and duty to defend any suit seeking those damages." The Defendant argues that the warning letter from the DEM does not constitute a suit which would trigger CNA's obligation to indemnify Industrial. Likewise, because no suit was actually filed by any third party, CNA should not pay Industrial's claims for expenses paid to the town of North Smithfield.
In liability insurance policies, such as the policy at issue here, the agreement imposes a requirement that the insured be accountable for a third party's damages, not merely that the insured be the factual cause of the damages. Couch on Insurance § 103:13. This is achieved by the language that the loss be one that the insured is "legally obligated to pay." "The term `legal liability' as used in a policy of insurance, means a liability such as a court of competent jurisdiction will recognize and enforce between parties litigant." Couch on Insurance § 103:14.
There are two views as to when an insured is legally obligated for damages. The first view is that legal liability can only arise after an entry of judgment against the insured. See e.g., Augat, Inc. v. LibertyMut. Ins. Co., 571 N.E.2d 357, 358 (Mass. 1991) (holding that an insurance company was under no obligation to pay for environmental clean up costs that the insured had voluntarily undertaken, in the face of the EPA's threat that it would clean up the site itself and then sue for treble damages, because it deprived the insurer an opportunity to protect its interests). The other view holds that a legal obligation to pay on the part of the insured is sufficient. See e.g., Potomac Ins. of Ill. v.Huang, 2002 U.S. Dist. LEXIS 4710 at *27 (KS 2002) (where an insured proactively settled a third party claim by paying for property damage caused by leaky windows he installed before the homeowners filed a lawsuit, the insured was entitled to reimbursement under his CGL policy because in Kansas a lawsuit by a third party is not a condition precedent to an insurer's obligation to pay); Domermuth Petroleum Equipment Maintainence Corp., 490 N.Y.S.2d 54, 56 (1985) (holding that an insurer was obligated to pay for voluntary cleanup costs that the insured undertook because a state navigation statute imposed strict liability for oil spills on land from which it might flow into public waters); Couch onInsurance § 103:14.
Rhode Island has not yet addressed whether "legally obligated" means that a final judgment must be entered. Because the term, "legally obligated," is not defined by the policy, and the case law supports two different meanings, this Court finds that the phrase is ambiguous. GardenCity Treatment Center, Inc. v. Coordinated Health Partners, 852 A.2d 535,541 (R.I. 2004) (whether a contract is ambiguous is a question of law; a contract is ambiguous when it is reasonably and clearly susceptible of more than one interpretation). When a term in an insurance policy is ambiguous, it will be strictly construed in favor of the insured.Bartlett v. American Mut. Ins. Co., 593 A.2d 45, 47 (R.I. 1991). In this case, because it is not clear whether the policy required that Industrial have an order of judgment entered against it before recovering under the policy, such a requirement will not be read into the policy by this Court.
Nevertheless, it is clear that the policy requires that the insured be accountable for the damages. This Court finds that Industrial was not accountable for the damage caused by the rupture because the rupture was caused by an Act of God, for which, Industrial would not have been held responsible. It is true that the city solicitor of North Smithfield would be able to make a prima facie case for public nuisance against Industrial. Public nuisance is the unreasonable interference with a right common to the general public. Hydro Manufacturing v. Kayser-Roth Corp.,640 A.2d 950, 957 (R.I. 1994). In this case, a public road was destroyed by an instrumentality of Industrial. This interfered with the general public's use of the road. Clearly the interference was unreasonable although Industrial's use of the water was reasonable.
However, the analysis does not end here. After the prima facie case for nuisance was made, Industrial would nevertheless be held blameless because the circumstances surrounding the incident, i.e., the heavy spring snow, the fortuitousness of the branch falling on the electrical line, which burned through the road, constitute an Act of God. Howard v.Union R. Co., 25 R.I. 652, 656 (R.I. 1904) ("The obstruction to [a railroad track] caused by the presence of snow thereon is not a nuisance. It is not placed there by human hands, but is the act of God'); see Uniroyal, Inc. v. Hood, 588 F.2d 454, 460 (5th Cir. 1979) (an act of God is an accident caused by physical causes which are irresistible or inevitable, such as lightning, storms, perils of the sea, earthquakes and inundations). Rhode Island Law recognizes the legal maxim, actus Dei nemini est damnosus.[3] Kirwin v. Mexican PetroleumCo., 267 F. 460 (D.R.I. 1920) (acknowledging the Act of God defense in dicta); Rose v. Socony-Vacuum Corp., 54 R.I. 411, 414-15 (R.I. 1934) (acknowledging the Act of God defense in dicta); see, Uniroyal,588 F.2d at 460 (5th Cir. 1979) (defendant not liable for water damage resulting from severe rainstorm because no tort liability arises from an Act of God); The Salton Sea Cases: California Development Co. v. NewLiverpool Salt Co., 172 D. 792, 819 (9th Cir. 1909) (where an irrigation ditch overflowed, defendant held not liable because "it would be unreasonable that those things which are inevitable by the act of God, which no industry can avoid, nor policy prevent, should be construed to the prejudice of any person in whom there has been no laches") (quoting Broom's Legal Maxims, 227-28); Bushnell v. Telluride Power Co.,145 F.2d 950, 952 (10th Cir. 1944) (damage resulting solely from an act of God does not create liability); Golden v. Amory, 109 N.E.2d 131
(Mass. 1952) (defendants not held liable where hurricane caused dike to overflow, despite strict liability rule for artificially collected water, because hurricane and resulting rain was an act of God).
Because Industrial could not be held legally responsible for the consequences of the snowstorm, etc., it was not legally obligated to pay for the repair. Industrial's insurance policy implicitly excludes coverage for damages to property that Industrial is not legally obligated to pay. Therefore, CNA was justified in denying Industrial's claim for moneys paid for road repair.
An act of God is not a legal defense to the environmental violation. Section 2-1-23 (a) (1) provides that:
 "No person, firm, industry, company, . . . or other individual or group may excavate; drain; fill; place garbage, . . . earth, rock, gravel, sand or other materials or effluents upon; add to or take from or otherwise alter the character of any freshwater wetland . . . without first obtaining the approval of the director of the department of environmental management."
Section 2-1-23 is entitled Violations and states that:
 "In the event of a violation of § 2-1-21, the director of environmental management has the power to order complete restoration of the fresh water wetland area involved by the person or agent responsible for the violation. If the responsible person or agent does not complete the restoration within a reasonable time following the order of the director of the department of environmental management, the director has the authority to order the work done by an agent of the director's choosing and the person or agent responsible for the original violation is liable for the cost of restoration. The violator is liable for a fine not exceeding five thousand dollars ($5,000) for each violation, except that if the violator knowingly or recklessly alters a fresh water wetland area without a permit or approval from the director . . . then the violator is liable for a fine not exceeding ten thousand dollars ($10,000) for each violation."
The statute is unambiguous. When a statute is clear and free from ambiguity, it is the obligation of this Court to give effect to its clearly expressed intent. Koch Fuels v. Clark, 676 A.2d 330, 336 (R.I. 1996). The clear intent of the statute is to impose liability for altering a wetland regardless of whether the violation is intentional or negligent. It is a strict liability statute that holds the violator responsible for damaging the wetland regardless of fault. Notably, the statute does not include a carve-out for Acts of God. Cf § 46-12.5.1-6 (A person otherwise liable for administrative penalties for discharging oil shall not be liable if the person demonstrates, by a preponderance of the evidence, that the discharge occurred solely as a result of an Act of God.). Because the legislature did not excuse violation of § 2-1-21 for Acts of God, as it did in § 46-12.5.1-6 for oil discharges, this Court finds that Industrial has a legal obligation to pay for all remediation of the wetlands effected by the rupture.
CNA draws the Court's attention to Ryan v. Royal Insurance Co.,916 F.2d 731, 733 (1st Cir. 1990) wherein Judge Lagueux held that a warning letter from the New York Department of Environmental Conservation (NYDEC) and EPA did not amount to a suit for which an insurer incurred the obligation to indemnify or defend its insured. This case is not applicable here for two reasons. First, this opinion holds that initiation of a suit is not a prerequisite under the policy. Second, in Ryan, the NYDEC or EPA never ordered the insured to perform any cleanup, decontamination, or other remediation. The scenario in Ryan is therefore distinguishable from the case at bar since the letter from DEM clearly demanded that Industrial take necessary steps to remove the sand that had washed into the wetlands.
CNA argues that since DEM has not enforced its order seven years after the incident, Industrial is not legally obligated to do anything. This Court is not persuaded by that argument. First, there is no statute of limitations that the Court is aware of that prevents the DEM from pursuing its administrative claim at any time. Second, under the voluntary payments prohibition in the policy, Industrial could not take further steps to remediate the wetlands without running the risk that CNA would not reimburse it. This judgment establishes that Industrial has a legal obligation to fulfill its duties under the Wetlands Act and so any moneys spent to remediate the wetland, including payments to the engineering firm it retained to perform the preliminary work, is covered under its commercial general liability policy. Furthermore, public policy concerns would not be advanced by encouraging companies to shirk their responsibility to the environment and to the citizens of Rhode Island until the DEM pursues enforcement of its order.
CNA's last argument is that its performance under the policy is excused because Industrial breached its duty under the contract not to make voluntary payments. Under the provision entitled "Duties in the Event of Occurrence, Claim or Suit," the policy states that, "no insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." The law in Rhode Island is well settled that the insurance company must show that it has been prejudiced before an insured's failure to comply with the procedural requirement in a policy will bar recovery.Pickwick Park Ltd. v. Terra Nova Ins. Co., 602 A.2d 515, 518 (R.I. 1992). Other than bald declarations of prejudice, CNA has not shown how it was prejudiced by Industrial's retention of an engineering specialist to develop a plan and seek bids to clean up the wetlands. Therefore, CNA must reimburse Industrial for the out of pocket expenses it incurred in anticipation of remediating the wetlands damaged by the rupture.
 Conclusions
Based on the evidence and briefs submitted, and for the reasons stated above, this Court finds that Industrial cannot recover for any claim made pursuant to its Commercial Property Insurance policy. These claims include the North Smithfield Fire Department and A.E. Bragger Construction Company claims. Neither can Industrial recover under its Commercial General Liability policy for resurfacing services contracted by the Town of North Smithfield. However, Industrial's claims for DEM ordered remediation and engineering services rendered thereto are covered under the liability policy.
[1] By stipulation of the parties, CNA was substituted for National Fire Insurance Company as party defendant.
[2] This number includes $15, 310.70 which represents the lowest bid received to perform the wetland remediation. This work has not yet been started, and the DEM has not undertaken any action to enforce its order.
[3] The act of God is hurtful to no one. That is a person cannot be prejudiced or held responsible for an accident occurring without his fault and attributable to the "act of God." Blacks Law Dictionary, 34 (5th
ed.)